# CUNNINGHAM *v.* HAMILTON COUNTY, OHIO

No. 98–727.   Argued April 19, 1999—Decided June 14, 1999

THOMAS, J., delivered the opinion for a unanimous Court. KENNEDY, J., filed a concurring opinion, *post*, p. 210.

*Thomas C. Goldstein* argued the cause for petitioner. With him on the briefs were *Jonathan D. Schiller* and *Teresa L. Cunningham.*

*John J. Arnold* argued the cause for respondent. With him on the brief were *Carl J. Stich* and *Shannon M. Reynolds.*

JUSTICE THOMAS delivered the opinion of the Court.

Federal courts of appeals ordinarily have jurisdiction over appeals from "final decisions of the district courts." 28 U. S. C. § 1291. This case presents the question whether an order imposing sanctions on an attorney pursuant to Federal Rule of Civil Procedure 37(a)(4) is a final decision. We hold that it is not, even where, as here, the attorney no longer represents a party in the case.

## I

Petitioner, an attorney, represented Darwin Lee Starcher in a federal civil rights suit filed against respondent and other defendants. Starcher brought the suit after his son, Casey, committed suicide while an inmate at the Hamilton County Justice Center.[1] The theory of the original complaint was that the defendants willfully ignored their duty to care for Casey despite his known history of suicide attempts.

A Magistrate Judge oversaw discovery. On May 29, 1996, petitioner was served with a request for interrogatories and documents; responses were due within 30 days after service. See Fed. Rules Civ. Proc. 33(b)(3), 34(b). This deadline, however, passed without compliance. The Magistrate Judge ordered the plaintiff "by 4:00 p.m. on July 12, 1996 to make full and complete responses" to defendants' requests for interrogatories and documents and further ordered that four witnesses—Rex Smith, Roxanne Dieffenbach, and two individual defendants—be deposed on July 25, 1996. *Starcher* v. *Correctional Medical Systems, Inc.,* No. C1–95–815 (SD Ohio, July 11, 1996), p. 2.

Petitioner failed to heed the Magistrate Judge's commands. She did not produce the requested documents, gave incomplete responses to several of the interrogatories, and objected to several others. Flouting the Magistrate Judge's

---

[1] Starcher died sometime after he initiated the suit, and Casey's sister became the new administrator of Casey's estate.

order, she noticed the deposition of Rex Smith on July 22, 1996, not July 25, and then refused to withdraw this notice despite reminders from defendants' counsel. And even though the Magistrate Judge had specified that the individual defendants were to be deposed only if plaintiff had complied with his order to produce "full and complete" responses, she filed a motion to compel their appearance. Respondent and other defendants then filed motions for sanctions against petitioner.

At a July 19 hearing, the Magistrate Judge granted the defendants' motions for sanctions. In a subsequent order, he found that petitioner had violated the discovery order and described her conduct as "egregious." App. to Pet. for Cert. 9a. Relying on Federal Rule of Civil Procedure 37(a)(4), the Magistrate Judge ordered petitioner to pay the Hamilton County treasurer $1,494, representing costs and fees incurred by the Hamilton County prosecuting attorney as counsel for respondent and one individual defendant.[2] He took care to specify, however, that he had not held a contempt hearing and that petitioner was never found to be in contempt of court.

The District Court affirmed the Magistrate Judge's sanctions order. The court noted that the matter "ha[d] already consumed an inordinate amount of the Court's time" and described the Magistrate's job of overseeing discovery as a "task assum[ing] the qualities of a full time occupation." App. to Pet. for Cert. 10a. It found that "[t]he Magistrate Judge did not err in concluding that sanctions were appropriate" and that "the amount of the Magistrate Judge's award was not contrary to law." Id., at 11a. The District Court also granted several defendants' motions to disqualify petitioner as counsel for plaintiff due to the fact that she was a material witness in the case.

---

[2] He also ordered petitioner to pay $2,432 as costs and fees incurred by other defendants in the case. Those sanctions were later satisfied pursuant to a settlement agreement and are not at issue in this appeal.

Although proceedings in the District Court were ongoing, petitioner immediately appealed the District Court's order affirming the Magistrate Judge's sanctions award to the United States Court of Appeals for the Sixth Circuit. The Court of Appeals, over a dissent, dismissed the appeal for lack of jurisdiction. *Starcher* v. *Correctional Medical Systems, Inc.*, 144 F. 3d 418 (1998). It considered whether the sanctions order was immediately appealable under the collateral order doctrine, which provides that certain orders may be appealed, notwithstanding the absence of final judgment, but only when they "are conclusive, . . . resolve important questions separate from the merits, and . . . are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint* v. *Chambers County Comm'n*, 514 U. S. 35, 42 (1995) (citing *Cohen* v. *Beneficial Industrial Loan Corp.*, 337 U. S. 541, 546 (1949)). In the Sixth Circuit's view, these conditions were not satisfied because the issues involved in petitioner's appeal were not "completely separate" from the merits. 144 F. 3d, at 424. As for the fact that petitioner had been disqualified as counsel, the court held that "a non-participating attorney, like a participating attorney, ordinarily must wait until final disposition of the underlying case before filing an appeal." *Id.*, at 425. It avoided deciding whether the order was effectively unreviewable absent an immediate appeal but saw "no reason why, after final resolution of the underlying case . . . a sanctioned attorney should be unable to appeal the order imposing sanctions." *Ibid.*

The Federal Courts of Appeals disagree over whether an order of Rule 37(a) sanctions against an attorney is immediately appealable under § 1291. Compare, *e. g.*, *Eastern Maico Distributors, Inc.* v. *Maico-Fahrzeugfabrik, G.m.b.h.*, 658 F. 2d 944, 946–951 (CA3 1981) (order not immediately appealable), with *Telluride Management Solutions, Inc.* v. *Telluride Investment Group*, 55 F. 3d 463, 465 (CA9 1995) (order immediately appealable). We granted a writ of cer-

tiorari, limited to this question, 525 U. S. 1098 (1999), and now affirm.[3]

## II

Section 1291 of the Judicial Code generally vests courts of appeals with jurisdiction over appeals from "final decisions" of the district courts.   It descends from the Judiciary Act of 1789, where "the First Congress established the principle that only 'final judgments and decrees' of the federal district courts may be reviewed on appeal." *Midland Asphalt Corp.* v. *United States,* 489 U. S. 794, 798 (1989) (quoting 1 Stat. 84); see generally Crick, The Final Judgment as a Basis for Appeal, 41 Yale L. J. 539, 548–551 (1932) (discussing history of final judgment rule in the United States).   In accord with this historical understanding, we have repeatedly interpreted § 1291 to mean that an appeal ordinarily will not lie until after final judgment has been entered in a case.   See, *e. g., Quackenbush* v. *Allstate Ins. Co.,* 517 U. S. 706, 712 (1996); *Digital Equipment Corp.* v. *Desktop Direct, Inc.,* 511 U. S. 863, 867 (1994); *Richardson-Merrell Inc.* v. *Koller,* 472 U. S. 424, 430 (1985).   As we explained in *Firestone Tire & Rubber Co.* v. *Risjord,* 449 U. S. 368 (1981), the final judgment rule serves several salutary purposes:

"It emphasizes the deference that appellate courts owe to the trial judge as the individual initially called upon to decide the many questions of law and fact that occur in the course of a trial.   Permitting piecemeal appeals would undermine the independence of the district judge, as well as the special role that individual plays in our judicial system.   In addition, the rule is in accordance with the sensible policy of avoid[ing] the obstruction to just claims that would come from permitting the harassment and cost of a succession of separate appeals from

---

[3] Petitioner also sought review of the Sixth Circuit's decision to apply its appealability ruling to petitioner rather than to apply that ruling only prospectively.   We declined to review this question.

the various rulings to which a litigation may give rise, from its initiation to entry of judgment. The rule also serves the important purpose of promoting efficient judicial administration." *Id.*, at 374 (citations and internal quotation marks omitted).

Consistent with these purposes, we have held that a decision is not final, ordinarily, unless it " 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.' " *Van Cauwenberghe* v. *Biard*, 486 U. S. 517, 521–522 (1988) (quoting *Catlin* v. *United States*, 324 U. S. 229, 233 (1945)).

The Rule 37 sanction imposed on petitioner neither ended the litigation nor left the court only to execute its judgment. Thus, it ordinarily would not be considered a final decision under § 1291. See, *e. g., Midland Asphalt Corp., supra,* at 798; *Richardson-Merrell, supra,* at 430. However, we have interpreted the term "final decision" in § 1291 to permit jurisdiction over appeals from a small category of orders that do not terminate the litigation. *E. g., Quackenbush, supra,* at 711–715; *Puerto Rico Aqueduct and Sewer Authority* v. *Metcalf & Eddy, Inc.,* 506 U. S. 139, 142–147 (1993); *Mitchell* v. *Forsyth,* 472 U. S. 511, 524–530 (1985); *Cohen, supra,* at 545–547. "That small category includes only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Swint, supra,* at 42.[4]

---

[4] Most of our collateral order decisions have considered whether an order directed at a party to the litigation is immediately appealable. *E. g., Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 468–469 (1978). Petitioner, of course, was an attorney representing the plaintiff in the case. It is nevertheless clear that a decision does not automatically become final merely because it is directed at someone other than a plaintiff or defendant. See *Richardson-Merrell Inc.* v. *Koller,* 472 U. S. 424, 434–435 (1985) (rejecting, as outside collateral order doctrine, immediate appeal of order disqualifying counsel). For example, we have repeatedly held that a wit-

Respondent conceded that the sanctions order was conclusive, Brief in Opposition 11, so at least one of the collateral order doctrine's conditions is presumed to have been satisfied. We do not think, however, that appellate review of a sanctions order can remain completely separate from the merits. See *Van Cauwenberghe, supra,* at 527–530; *Coopers & Lybrand* v. *Livesay,* 437 U. S. 463, 469 (1978). In *Van Cauwenberghe,* for example, we held that the denial of a motion to dismiss on the ground of *forum non conveniens* was not a final decision. We reasoned that consideration of the factors underlying that decision such as "the relative ease of access to sources of proof" and "the availability of witnesses" required trial courts to "scrutinize the substance of the dispute between the parties to evaluate what proof is required, and determine whether the pieces of evidence cited by the parties are critical, or even relevant, to the plaintiff's cause of action and to any potential defenses to the action." 486 U. S., at 528. Similarly, in *Coopers & Lybrand,* we held that a determination that an action may not be maintained as a class action also was not a final decision, noting that such a determination was enmeshed in the legal and factual aspects of the case. 437 U. S., at 469.

Much like the orders at issue in *Van Cauwenberghe* and *Coopers & Lybrand,* a Rule 37(a) sanctions order often will be inextricably intertwined with the merits of the action. An evaluation of the appropriateness of sanctions may require the reviewing court to inquire into the importance of the information sought or the adequacy or truthfulness of a response. See, *e. g., Thomas E. Hoar, Inc.* v. *Sara Lee Corp.,* 882 F. 2d 682, 687 (CA2 1989) (adequacy of responses); *Outley*

---

ness subject to a discovery order, but not held in contempt, generally may not appeal the order. See, *e. g., United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.,* 487 U. S. 72, 76 (1988); *United States* v. *Ryan,* 402 U. S. 530, 533–534 (1971); *Cobbledick* v. *United States,* 309 U. S. 323, 327–330 (1940); *Webster Coal & Coke Co.* v. *Cassatt,* 207 U. S. 181, 186–187 (1907); *Alexander* v. *United States,* 201 U. S. 117, 121 (1906).

v. *New York,* 837 F. 2d 587, 590–591 (CA2 1988) (importance of incomplete answers to interrogatories); *Evanson* v. *Union Oil Company of Cal.,* 619 F. 2d 72, 74 (Temp. Emerg. Ct. App. 1980) (truthfulness of responses). Some of the sanctions in this case were based on the fact that petitioner provided partial responses and objections to some of the defendants' discovery requests. To evaluate whether those sanctions were appropriate, an appellate court would have to assess the completeness of petitioner's responses. See Fed. Rule Civ. Proc. 37(a)(3) ("For purposes of this subdivision an evasive or incomplete disclosure, answer, or response is to be treated as a failure to disclose, answer, or respond"). Such an inquiry would differ only marginally from an inquiry into the merits and counsels against application of the collateral order doctrine. Perhaps not every discovery sanction will be inextricably intertwined with the merits, but we have consistently eschewed a case-by-case approach to deciding whether an order is sufficiently collateral. See, *e. g., Digital Equipment Corp.,* 511 U. S., at 868; *Richardson-Merrell,* 472 U. S., at 439.

Even if the merits were completely divorced from the sanctions issue, the collateral order doctrine requires that the order be effectively unreviewable on appeal from a final judgment. Petitioner claims that this is the case. In support, she relies on a line of decisions holding that one who is not a party to a judgment generally may not appeal from it. See, *e. g., Karcher* v. *May,* 484 U. S. 72, 77 (1987). She also posits that contempt orders imposed on witnesses who disobey discovery orders are immediately appealable and argues that the sanctions order in this case should be treated no differently.

Petitioner's argument suffers from at least two flaws. It ignores the identity of interests between the attorney and client. Unlike witnesses, whose interests may differ substantially from the parties', attorneys assume an ethical obligation to serve their clients' interests. *Evans* v. *Jeff D.,* 475

U. S. 717, 728 (1986). This obligation remains even where the attorney might have a personal interest in seeking vindication from the sanctions order. See *Richardson-Merrell, supra,* at 434–435. In *Richardson-Merrell,* we held that an order disqualifying an attorney was not an immediately appealable final decision. 472 U. S., at 429–440; see also *Flanagan* v. *United States,* 465 U. S. 259, 263–269 (1984) (order disqualifying attorney in criminal case not a "final decision" under § 1291). We explained that "[a]n attorney who is disqualified for misconduct may well have a personal interest in pursuing an immediate appeal, an interest which need not coincide with the interests of the client. As a matter of professional ethics, however, the decision to appeal should turn entirely on the client's interest." *Richardson-Merrell, supra,* at 435 (citing ABA Model Rules of Professional Conduct 1.7(b), 2.1 (1985)). This principle has the same force when an order of discovery sanctions is imposed on the attorney alone. See *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation,* 747 F. 2d 1303, 1305 (CA9 1984) (Kennedy, J.). The effective congruence of interests between clients and attorneys counsels against treating attorneys like other nonparties for purposes of appeal. Cf. *United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.,* 487 U. S. 72, 78 (1988).

Petitioner's argument also overlooks the significant differences between a finding of contempt and a Rule 37(a) sanctions order. "Civil contempt is designed to force the contemnor to comply with an order of the court." *Willy* v. *Coastal Corp.,* 503 U. S. 131, 139 (1992). In contrast, a Rule 37(a) sanctions order lacks any prospective effect and is not designed to compel compliance. Judge Adams captured the essential distinction between the two types of orders when he noted that an order such as civil contempt

"is not simply to deter harassment and delay, but to effect some discovery conduct. A non-party's interest in resisting a discovery order is immediate and usually sep-

arate from the parties' interests in delay. Before final judgment is reached, the non-party either will have surrendered the materials sought or will have suffered incarceration or steadily mounting fines imposed to compel the discovery. If the discovery is held unwarranted on appeal only after the case is resolved, the non-party's injury may not be possible to repair. Under Rule 37(a), no similar situation exists. The objective of the Rule is the prevention of delay and costs to other litigants caused by the filing of groundless motions. An attorney sanctioned for such conduct by and large suffers no inordinate injury from a deferral of appellate consideration of the sanction. He need not in the meantime surrender any rights or suffer undue coercion." *Eastern Maico Distributors*, 658 F. 2d, at 949–950 (citation and footnote omitted).

To permit an immediate appeal from such a sanctions order would undermine the very purposes of Rule 37(a), which was designed to protect courts and opposing parties from delaying or harassing tactics during the discovery process.[5]

---

[5] In 1970, the prerequisites for imposing sanctions were redesigned "to encourage judges to be more alert to abuses occurring in the discovery process." Advisory Committee's Notes on Fed. Rule Civ. Proc. 37(a)(4), 28 U. S. C., p. 748. Before 1970, the Rule required a court, after granting a motion to compel discovery but before imposing sanctions, to find the losing party to have acted without substantial justification. At that time, courts rarely exercised this authority to impose sanctions. See W. Glaser, Pretrial Discovery and the Adversary System 154 (1968). While the amended Rule retained the substantial justification requirement, the placement of the requirement was changed so that the Rule provided that the district court, upon granting the motion to compel, "shall" impose the sanction unless it found that the losing party's conduct was "substantially justified." The change in placement signaled a shift in presumption about the appropriateness of sanctions for discovery abuses. See Federal Discovery Rules: Effects of the 1970 Amendments, 8 Colum. J. L. & Soc. Probs. 623, 642 (1972) ("The Advisory Committee reversed the presumption in Rule 37(a)(4) in order to encourage the awarding of expenses and fees wherever applicable").

Immediate appeals of such orders would undermine trial judges' discretion to structure a sanction in the most effective manner. They might choose not to sanction an attorney, despite abusive conduct, in order to avoid further delays in their proceedings. Not only would such an approach ignore the deference owed by appellate courts to trial judges charged with managing the discovery process, see *Firestone Tire & Rubber Co.*, 449 U. S., at 374, it also could forestall resolution of the case as each new sanction would give rise to a new appeal. The result might well be the very sorts of piecemeal appeals and concomitant delays that the final judgment rule was designed to prevent.

Petitioner finally argues that, even if an attorney ordinarily may not immediately appeal a sanction order, special considerations apply when the attorney no longer represents a party in the case. Like the Sixth Circuit, we do not think that the appealability of a Rule 37 sanction imposed on an attorney should turn on the attorney's continued participation. Such a rule could not be easily administered. For example, it may be unclear precisely when representation terminates, and questions likely would arise over when the 30-day period for appeal would begin to run under Federal Rule of Appellate Procedure 4. The rule also could be subject to abuse if attorneys and clients strategically terminated their representation in order to trigger a right to appeal with a view to delaying the proceedings in the underlying case. While we recognize that our application of the final judgment rule in this setting may require nonparticipating attorneys to monitor the progress of the litigation after their work has ended, the efficiency interests served by limiting immediate appeals far outweigh any nominal monitoring costs borne by attorneys. For these reasons, an attorney's continued participation in a case does not affect whether a sanctions order is "final" for purposes of § 1291.

We candidly recognize the hardship that a sanctions order may sometimes impose on an attorney. Should these hard-

ships be deemed to outweigh the desirability of restricting appeals to "final decisions," solutions other than an expansive interpretation of § 1291's "final decision" requirement remain available. Congress may amend the Judicial Code to provide explicitly for immediate appellate review of such orders. See, e. g., 28 U. S. C. §§ 1292(a)(1)–(3). Recent amendments to the Judicial Code also have authorized this Court to prescribe rules providing for the immediate appeal of certain orders, see §§ 1292(e), 2072(c), and "Congress' designation of the rulemaking process as the way to define or refine when a district court ruling is 'final' and when an interlocutory order is appealable warrants the Judiciary's full respect." Swint, 514 U. S., at 48 (footnote omitted). Finally, in a particular case, a district court can reduce any hardship by reserving until the end of the trial decisions such as whether to impose the sanction, how great a sanction to impose, or when to order collection.

* * *

For the foregoing reasons, we conclude that a sanctions order imposed on an attorney is not a "final decision" under § 1291 and, therefore, affirm the judgment of the Court of Appeals.

*It is so ordered.*

JUSTICE KENNEDY, concurring.

This case comes to our argument docket, of course, so that we may resolve a split of authority in the Circuits on a jurisdictional issue, not because there is any division of opinion over the propriety of the underlying conduct. Cases involving sanctions against attorneys all too often implicate allegations that, when true, bring the law into great disrepute. Delays and abuses in discovery are the source of widespread injustice; and were we to hold sanctions orders against attorneys to be appealable as collateral orders, we would risk compounding the problem for the reasons suggested by JUS-

TICE THOMAS in his opinion for the Court. Trial courts must have the capacity to ensure prompt compliance with their orders, especially when attorneys attempt to abuse the discovery process to gain a tactical advantage.

It should be noted, however, that an attorney ordered to pay sanctions is not without a remedy in every case. If the trial court declines to stay enforcement of the order and the result is an exceptional hardship itself likely to cause an injustice, a petition for writ of mandamus might bring the issue before the Court of Appeals to determine if the trial court abused its discretion in issuing the order or denying the stay. See *Richardson-Merrell Inc.* v. *Koller*, 472 U. S. 424, 435 (1985). In addition, if a contempt order is entered and there is no congruence of interests between the person subject to the order and a party to the underlying litigation, the order may be appealable. See *In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation*, 747 F. 2d 1303, 1305–1306 (CA9 1984). In *United States Catholic Conference* v. *Abortion Rights Mobilization, Inc.*, 487 U. S. 72, 76 (1988), a case involving a nonparty witness, we said: "The right of a nonparty to appeal an adjudication of contempt cannot be questioned. The order finding a nonparty witness in contempt is appealable notwithstanding the absence of a final judgment in the underlying action."

The case before us, however, involves an order for sanctions and nothing more. I join the opinion of the Court and its holding that the order is not appealable under the collateral order doctrine.