**Clarence Henry CARTER,**
**Plaintiff–Appellant,**

**v.**

**Joe JABLONSKY, Sheriff, et al.;**
**Kerzner, Officer Defendants–**
**Appellees.**

**Docket No. 03–7118.**

United States Court of Appeals,
Second Circuit.

Jan. 27, 2005.

Clarence Henry Carter, Manorville, New York, for Appellant, pro se.

Lorna B. Goodman, County Attorney, Nassau County, David B. Goldin, Deputy County Attorney, Mineola, New York, for Appellees.

PRESENT: RAGGI, WESLEY, Circuit Judges, and DRONEY, District Judge.[1]

### SUMMARY ORDER

Plaintiff-appellant Clarence Henry Carter appeals the district court's decision to dismiss his case as a sanction for failing to obey scheduling and pretrial orders and failing to participate in scheduled pretrial conferences. We assume the parties' familiarity with the facts and the procedural history of the case, which we reference only as necessary to explain our decision to affirm.

Rule 16(f) states, in pertinent part, "[i]f a party or party's attorney fails to obey a

---

1. The Honorable Christopher F. Droney, of the United States District Court for the Dis- trict of Connecticut, sitting by designation.

scheduling or pretrial order, or if no appearance is made on behalf of a party at a scheduling or pretrial conference, ... the judge, upon motion or the judge's own initiative, may make such orders with regard thereto as are just, and among others any of the orders provided in Rule 37(b)(2)(B), (C), (D)." Fed.R.Civ.P. 16(f). Rule 37, which focuses on the discovery obligations of civil litigants, specifically identifies dismissal as a possible sanction for failure to obey a discovery order. Fed. R.Civ.P. 37(b)(2)(C). Thus, in reviewing a district court's dismissal order under Rule 16(f), we apply the same standards developed with respect to Rule 37(b)(2) sanctions. *See* Fed.R.Civ.P. 16 Advisory Committee Notes, 1983 Amendment ("Rule 16(f) incorporates portions of Rule 37(b)(2), which prescribes sanctions for failing to make discovery. This should facilitate application of Rule 16(f), since courts and lawyers already are familiar with the Rule 37 standards."). Specifically, we will not reverse a district court's dismissal sanction unless the record demonstrates abuse of discretion. *See Friends of Animals, Inc. v. United States Surgical Corp.,* 131 F.3d 332, 334 (2d Cir.1997) (per curiam); *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d 1172, 1176 (2d Cir. 1988); *cf. Ashlodge, Ltd. v. Hauser,* 163 F.3d 681, 683 (2d Cir.1998) (per curiam) (reviewing Rule 16(f) monetary sanction for abuse of discretion), *abrogated on other grounds, Cunningham v. Hamilton County,* 527 U.S. 198, 200, 119 S.Ct. 1915, 144 L.Ed.2d 184 (1999). No such abuse is present in this case.

As this court has observed in the context of Rule 37(b)(2), dismissal " 'is a drastic remedy that should be imposed only in extreme circumstances,' usually after consideration of alternative, less drastic sanctions." *John B. Hull, Inc. v. Waterbury Petroleum Prods., Inc.,* 845 F.2d at 1176 (quoting *Salahuddin v. Harris,* 782 F.2d

1127, 1132 (2d Cir.1986)). Nevertheless, we have recognized the propriety of a dismissal sanction where a party fails to comply with court orders "willfully, in bad faith, or through fault." *Id.* (and cases cited therein). Although the district court did not explicitly find that Carter acted willfully, in bad faith, or through fault, or specifically discuss why alternative, less drastic sanctions were inadequate, the record so plainly demonstrates Carter's flagrant disregard of court orders despite the court's patient efforts to secure his compliance that we cannot conclude that the ultimate decision to dismiss the complaint constituted an abuse of discretion.

Simply by way of illustration, we note that on April 9, 2002, the magistrate judge supervising pre-trial proceedings in this case entered an order directing Carter to file his part of a pre-trial order by May 17, 2002, with defendants to submit their part soon thereafter. When Carter inexplicably failed to meet this deadline, the magistrate judge proposed no action against Carter. He simply devised a practical solution to keep the case moving: he ordered defendants to file their part of the pre-trial order first, affording Carter until August 1, 2002 to submit his part. In so doing, however, the magistrate judge cautioned Carter that if he failed to comply with the new deadline, he could face sanctions, including dismissal of his case. Carter, however, simply ignored the new deadline, prompting the district judge to order the parties' personal appearance before her on September 27, 2002.

Although Carter appeared before the court on September 27, he declined to identify his trial witnesses, representing that he had been unable to prepare for trial because his house had burned down in a fire. (He subsequently disclosed that the fire had occurred almost a year earlier on November 14, 2001.) Once again, the

court did not impose sanctions; its focus was sensibly directed to alternative means to keep the case moving. It granted Carter an extension of almost two months, until November 18, 2002, to submit simply his list of proposed trial witnesses and exhibits. Further, to facilitate this filing despite any papers that may have been lost in the fire, the court requested that defense counsel send Carter copies of all pleadings, discovery, court documents, and correspondence in the case to date. Counsel transmitted this material to Carter on October 4, 2002. Further, on November 7, 2002, the district judge wrote to Carter to remind him of the November 18, 2002 deadline, cautioning that a failure to file on the appointed date could prompt dismissal of his case.

Despite these considerable efforts on the part of the district court, Carter did not file his witness and exhibit lists on November 18, 2002. Instead, in a trio of letters dated November 17, 18, and 19, 2002—but not filed with the court until November 19, 2002—Carter requested a further 90-day adjournment of his filing deadline, again citing his house burning a year before, as well as the deaths (on unspecified dates) of an aunt and nephew, to explain his need for more time.

Not surprisingly, the district court did not grant the adjournment, but neither did it take immediate action to sanction Carter. Not until January 13, 2003, with Carter still having failed to file witness and exhibit lists, did the court dismiss his case.

Because we are satisfied from the totality of these circumstances that the district court imposed a dismissal sanction only after exploring numerous other options to secure Carter's cooperation, see *Minotti v. Lensink,* 895 F.2d 100, 103 (2d Cir.1990) (per curiam) (affirming dismissal pursuant to Rule 37(b)(2)(C) in part because "the district court explored numerous options before ordering dismissal, such as repeatedly allowing [pro se plaintiff] additional time to comply with the discovery orders, informing [plaintiff] of the actions he must take in order to comply with the orders, and warning [plaintiff] about the threat of dismissal"), and only after giving him repeated warnings, see *Valentine v. Museum of Modern Art,* 29 F.3d 47, 50 (2d Cir.1994) (per curiam) ("The severe sanction of dismissal with prejudice may be imposed even against a plaintiff who is proceeding pro se, so long as a warning has been given that noncompliance can result in dismissal."); *Minotti v. Lensink,* 895 F.2d at 103 ("'all litigants, including pro ses, have an obligation to comply with court orders'") (quoting *McDonald v. Head Criminal Court Supervisor Officer,* 850 F.2d 121, 124 (2d Cir.1988)). We conclude that its action did not constitute an abuse of discretion.

Accordingly, the January 16, 2003 judgment ordering dismissal of this case is AFFIRMED.