**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 14a0095n.06

**No. 12-4262**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Feb 04, 2014
DEBORAH S. HUNT, Clerk

WILLIAM HOWE, ET AL.,

    **Plaintiffs-Appellants,**

v.

**CITY OF AKRON,**

    **Defendant-Appellee.**

          /

**ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OHIO**

BEFORE:    BOGGS, CLAY, and GILMAN, Circuit Judges.

**CLAY, Circuit Judge.**  Plaintiffs appeal an order sanctioning them, pursuant to 28 U.S.C. § 1927, for abuse of the discovery process. An earlier trial resulted in a verdict for Plaintiffs, who are a group of firefighters who alleged discrimination in the promotions process by the City of Akron. The district court ordered a new trial on the issue of damages only. After extensive discovery and motions practice, the district court ordered Plaintiffs to pay Defendant $97,056.18 in fees for abuse of the discovery process, on the basis of Plaintiffs' shifting damages theories. Plaintiffs appeal the sanction order. For the following reasons, we **DISMISS** this appeal for lack of jurisdiction.

**BACKGROUND**

Plaintiffs in this case are a group of firefighters who allege that the City of Akron ("City") engaged in discriminatory practices in its promotions process for the positions of lieutenant and

captain in the Akron Fire Department. On December 23, 2008, a jury returned a verdict for Plaintiffs. The district court entered judgment in 2010, finding that the 2004 promotional examination had an adverse impact on twelve white candidates for the rank of captain on the basis of race, on three African-American candidates for the rank of lieutenant on the basis of race, and on eleven candidates for the rank of lieutenant based on their age. *Howe v. City of Akron*, 789 F. Supp. 2d 786, 794 (N.D. Ohio 2010).

Although the jury returned a verdict for Plaintiffs, the district court concluded that the jury had erred with respect to damages. In April, 2011, the court ordered a new trial on the question of damages, and scheduled the trial for July, 2011. What followed was a contentious discovery period, during which the City repeatedly attempted to invoke privilege with respect to its damages calculations, and Plaintiffs refused to answer questions relating to their promotional exams. The City completed its depositions of the firefighters by June 18, 2011.

As the case moved closer to trial, the parties filed various motions *in limine*. Because Plaintiffs had abandoned their claim for emotional distress damages under Ohio law, they were no longer entitled to a jury trial, and the district court announced that there would instead be a bench trial. Whether this was a correct ruling is not before the Court at this time. On July 13, 2011, the court also ordered the immediate promotion of Plaintiffs who remained employed by the City, and ruled that the back-pay period for the firefighters began on April 5, 2007. The district court further ordered the City to pay $250,000 in attorneys' fees to Plaintiffs as the prevailing party. The City's motion to stay the promotions was denied by both the district court and the Sixth Circuit. *City of*

*Akron*, 723 F.3d 651, 655 (6th Cir. 2013). The damages trial, which had been delayed because of the motion to stay, was pushed back to July 25, 2011.

Although there is a complicated and somewhat confusing record of various motions and arguments, the basic issue in this appeal exists because of the dispute regarding how to calculate back-pay. Plaintiffs, at various points in the litigation, have suggested two different ways of calculating back-pay. The first method, referred to as the Snyder method, was to calculate the average salary of all firefighters promoted to the rank of captain or lieutenant at the prior examination. Then an individual Plaintiff would compare his actual salary for the time period with the average pay of someone who had been promoted. The alternative method, referred to as the Carr method, started with the actual salary received by each firefighter during the back-pay period and incorporated step increases as if each had been promoted. So for year one, a Plaintiff would assume a certain percentage increase due to the promotion based on his actual salary, then in year two he would incorporate further increases based on a known pay scale. During the deposition of Bradley Carr ("Carr"), one of the Plaintiffs, Carr stated that he preferred the method bearing his name, but that Plaintiffs had abandoned it. The City therefore did not question Carr about the calculations under that method.

Plaintiffs' exhibit list for trial included a calculation of damages based on the Snyder method. But when Plaintiffs filed their amended exhibit list, it included exhibits 207–09, which included loss calculations based on the Carr method. That amended exhibit list was submitted two days after the first exhibit list, and ten days before the delayed trial was to open. Defendant objected, claiming that the exhibits were untimely. Because of both the City's objection and the pending review of the

district court's denial of a stay of the promotions, the trial was delayed until July 25, 2011. After the trial commenced, the City argued that it had not been able to effectively cross-examine Plaintiffs on the Carr method at deposition, even though Plaintiffs were relying on the Carr method as their theory of damages at trial. Rather than rule on the objections, the district court suspended the trial, and heard arguments about the objections. Having heard arguments, the district court excluded part of the Plaintiffs' evidence regarding damages, and reopened discovery to permit re-deposition of two Plaintiffs on the Carr method-of-damages calculation. After doing so, the district court permitted the trial to go forward, but at the conclusion of the four-day trial, the court ordered briefing on the issue of sanctions with respect to Plaintiffs' attorneys' conduct during discovery. The district court also asked the City to provide a calculation of its fees associated with deposing Plaintiffs.

After briefing on the issues, the district court entered, on September 24, 2012, an order that denied the City's motion for partial summary judgment, but which also awarded the City $97,056.18 in fees pursuant to 28 U.S.C. § 1927, because it found that Plaintiffs had needlessly multiplied the proceedings and abused the judicial process. After that order was entered, the City rested its case in the underlying action. No judgment has yet been entered. On October 19, 2012, Plaintiffs appealed the order awarding attorneys' fees. The City moved this Court to dismiss the appeal as premature. That motion was then referred to this panel.

**ANALYSIS**

A United States Court of Appeals has jurisdiction only over the final orders and decisions of a district court. 28 U.S.C. § 1291. That rule "descends from the Judiciary Act of 1789, where 'the First Congress established the principle that only final judgments and decrees of the federal

district courts may be reviewed on appeal.'" *Cunningham v. Hamilton Cnty.*, 527 U.S. 198, 203 (1999) (quoting *Midland Asphalt Corp. v. United States*, 489 U.S. 794, 798 (1989)). A sanction order is not a final order or decision of the district court, *see id*. at 210, nor does such an order fit within the exception to the rule based upon the collateral-order doctrine.

In *Cunningham*, the Supreme Court found that a sanction imposed on an attorney pursuant to Federal Rule of Civil Procedure 37(a)(4) was not a final decision, nor could it be appealed on an interlocutory basis pursuant to the collateral-order doctrine. *Id*. at 200. As the Supreme Court described the rule, "a decision is not final, ordinarily, unless it 'ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'" *Id*. at 204 (quoting *Van Cauwenberghe v. Biard*, 486 U.S. 517, 521–22 (1988)). The collateral-order exception "permit[s] jurisdiction over appeals from a small category of orders that do not terminate the litigation . . . includ[ing] only decisions that are conclusive, that resolve important questions separate from the merits, and that are effectively unreviewable on appeal from the final judgment in the underlying action." *Id*. (citations omitted). Since the sanction order here, like that in *Cunningham*, is likely to "be inextricably intertwined with the merits," *id*. at 205, the collateral-order exception to the jurisdictional bar does not apply.

In any event, "the collateral order doctrine requires that the order be effectively unreviewable on appeal from a final judgment." *Id*. at 206. Plaintiffs offer little to suggest that the sanction order will not be reviewable at a later date. Although they claim that Plaintiffs' counsel will suffer irreparable reputational harm in the interim, they offer no concrete evidence of this fact. Even granting some degree of reputational harm, we must recognize that such harm is likely a

consequence of any sanction order, and therefore, were we to hold the risk of a damaged reputation sufficient to warrant immediate review, we would make every sanction order immediately reviewable. This we are not prepared to do. Accordingly, we dismiss the appeal for lack of appellate jurisdiction.

Plaintiffs make one further argument for review. That argument is that this Court could convert the appeal into a motion for a writ of mandamus. It is clear that we have the authority to do so, but mandamus is not appropriate where direct review may be obtained later. *See e.g.*, *Balintulo v. Daimler AG*, 727 F.3d 174, 187 (2d Cir. 2013). Only if there is a harm that could not be remedied on appeal after final judgment should an appeal for which this Court lacks jurisdiction be converted into an application for the writ. Plaintiffs cite no cases, and we can find none, that hold that sanctions under the circumstances of this case constitute this sort of harm. The best Plaintiffs could do was to cite contempt cases that permit such an action, but as the Supreme Court explained in *Cunningham*, contempt authority is different from authority to sanction because, whereas contempt penalties are designed to get the contemnor to comply with an order of the court, discovery sanctions do not have a prospective element. *Cunningham*, 527 U.S. at 207. Therefore, any harm as a result of improperly imposed monetary sanctions can be remedied on direct appeal.

## CONCLUSION

For the foregoing reasons, we **DISMISS** the appeal for lack of jurisdiction.

**Gilman, J., concurring.** I fully concur with the lead opinion in this case, which holds that we lack interlocutory jurisdiction over this appeal. For the potential benefit of the parties in ultimately resolving this case, however, I write separately to express my doubts regarding the propriety of the sanctions order imposed by the district court. As an initial matter, the Sixth Circuit has repeatedly cautioned against imposing sanctions on civil rights plaintiffs because the freewheeling imposition of sanctions might chill future meritorious lawsuits. *See, e.g.*, *Garner v. Cuyahoga Cnty. Juvenile Ct.*, 554 F.3d 624, 635 (6th Cir. 2009) ("[A]warding attorney fees against a nonprevailing plaintiff in a civil rights action is an extreme sanction, and must be limited to truly egregious cases of misconduct.") (internal quotation marks omitted). Similarly, imposing sanctions on attorneys pursuant to 28 U.S.C. § 1927 should be limited to instances involving serious misrepresentations or vexatious litigation tactics, neither of which appear to be present here. *See Jones v. Cont'l Corp.*, 789 F.2d 1225, 1230 (6th Cir. 1986) (discussing § 1927 sanctions).

The sanctions strike me as particularly inappropriate because of the severe time constraints imposed on the plaintiffs by the district court's timing of its own orders. Although the discovery cutoff date was June 17, 2011, the court did not issue its order regarding the commencement date for backpay until July 13, 2011, almost a month after the close of discovery and less than two weeks before the damages phase of the trial began. This order, which set April 5, 2007 as the start date for the award of backpay instead of the year 2005, required the plaintiffs to revisit their calculation of damages. The Carr method, unlike the Snyder method, contained the correct start date for backpay and used a gross-up methodology to more accurately calculate the backpay due the firefighters. Given these time constraints, the conduct of the firefighters' counsel looks less egregious.

The last-minute determination of the start date also makes the district court's characterization of the actions by the firefighters' counsel as a "bait and switch" tactic appear overwrought. True enough, the district court's frustration with the seemingly interminable nature of this seven-year-old case is understandable. *See United States v. Hastings*, 847 F.2d 920, 923 (1st Cir. 1988) ("[J]ustice delayed is justice denied."). But the computation of damages in this case does not appear to require anything more sophisticated than the underlying payroll data, a grasp of arithmetic, and an Excel spreadsheet. The relative ease with which damages can be calculated is best evidenced by the fact that two non-experts, Snyder and Carr, devised the competing methods for calculating them.

Also troubling is the fact that neither party in this case has clean hands. The City, for its part, improperly attempted to relitigate the merits of the case during the damages phase. Moreover, as the lead opinion points out, the City resisted producing its damages calculations during discovery. Yet the City, unlike counsel for the firefighters, received only a comparative "slap on the wrist" from the district court for its bad behavior. Neither the City's conduct nor that of the firefighters' counsel should be condoned, but the firefighters' attorneys appear to have been disproportionately penalized by the court.

Finally, the amount of the sanctions award seems to bear little relationship to the harm, if any, caused by the switch. Instead of reimbursing the City only for the costs incurred in redeposing the plaintiffs in June 2011, the district court totaled all of the City's fees and costs from January 2011 until July 2011 and then reduced the total by half. This lack of precision in isolating the harm allegedly caused by the conduct of the firefighters' counsel does not pass muster under 28 U.S.C. § 1927. *See Peterson v. BMI Refractories*, 124 F.3d 1386, 1396 (11th Cir. 1997) (noting that the

"sanction must bear a financial nexus to the excess proceedings"). For all of these reasons, the

sanctions award strikes me as an unjustified overreaction by the district court.