**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| KENDALL LYNN,<br>*Plaintiff*,<br><br>and<br><br>ROBERT E. THURBON,<br>*Appellant*,<br><br>v.<br><br>GATEWAY UNIFIED SCHOOL DISTRICT,<br>*Defendant-Appellee*. | No. 12-15104<br><br>D.C. No.<br>2:10-cv-00981-JAM-CMK<br><br><br>OPINION |

Appeal from the United States District Court
for the Eastern District of California
John A. Mendez, District Judge, Presiding

Argued and Submitted
February 12, 2014—San Francisco, California

Filed November 6, 2014

Before: Richard C. Tallman and Johnnie B. Rawlinson,
Circuit Judges, and Thomas O. Rice, District Judge.[*]

Opinion by Judge Rawlinson

---

[*] The Honorable Thomas O. Rice, United States District Judge for the Eastern District of Washington, sitting by designation.

## SUMMARY[**]

### Sanctions / Appellate Jurisdiction

The panel dismissed for lack of jurisdiction an attorney's appeal from an order finding that he committed ethical violations, and disqualifying him from representing the plaintiff in a wrongful termination action.

The panel held that it lacked jurisdiction because the ethical violations were intertwined with the disqualification order, and disqualification is not subject to interlocutory appeal.

### COUNSEL

Robert E. Thurbon, Thurbon & McHaney, LP, Gold River, California, Appellant in Proper Person.

John P. Kelley, Halkides, Morgan & Kelley, Redding, California, for Defendant-Appellee.

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**OPINION**

RAWLINSON, Circuit Judge:

Attorney Robert E. Thurbon (Thurbon) appeals the district court's order finding that he committed ethical violations, and disqualifying him from representing the plaintiff Kendall Lynn (Lynn) in a pending action against Gateway Unified School District (Gateway). Because the ethical violations are intertwined with the disqualification order, and because the United States Supreme Court has held that disqualification is not subject to interlocutory appeal, we dismiss the appeal for lack of jurisdiction.

## I.  BACKGROUND

Lynn is the former Director of Information and Technology for Gateway. He was responsible "for maintaining, operating and ensuring the security of [Gateway's] Information Technology systems including [its] email system." Lynn "reported directly to the Assistant Superintendent and the Superintendent . . ."

John Strohmayer (Strohmayer) was the Superintendent for Gateway from 2002 to June 30, 2009. From July 1, 2009, to June 30, 2011, Robert Hubbell (Hubbell) was the Superintendent. Jody Thulin (Thulin) was the Assistant Superintendent/Chief Business Official of Gateway. On June 3, 2009, when Thulin was on administrative leave, Hubbell met with Thulin, among others, to assess whether she would be a "good fit" for his administrative team.

After his meeting with Thulin, Hubbell concluded that she "was not a team player and was confrontational . . .[,] had

very limited experience as a Chief Business Official; seemed highly opinionated; appeared controlling and would be a constant battle . . ."   On June 29, 2009, Hubbell recommended to the Gateway Board of Trustees (Board) that Thulin be reassigned to a teaching position.  The Board voted unanimously in favor of reassignment, effective June 30, 2009.  Thulin "refused the position, resigned and commenced litigation. . . ."  Thurbon was the attorney for both Lynn and Thulin.

Hubbell also met with Lynn "to inform him of likely cuts to his department, includ[ing] the possible elimination of [Lynn's] position."  On or about August 14, 2009, Hubbell met with Lynn to tell him that Hubbell would be recommending that the Board eliminate Lynn's position during the next Board meeting.  On August 19, 2009,[1] Hubbell recommended to the Board that Lynn's "position be eliminated for budgetary reasons," and the Board approved the recommendation, effective October 6, 2009.   Lynn worked August 21, 2009, and was out on sick leave from August 24, 2009, through October 6, 2009.  Believing his layoff was based on his race, and because he was thought to have aided Thulin in her lawsuit, Lynn instituted the underlying action for wrongful termination.

According to Lynn, some time before June 30, 2009, he "began a random sampling and review of [Gateway's] emails to determine what if any security issues, breaches . . . or misuse . . . were occurring as expressed by" Strohmayer and Director of Human Resources Kathy Campbell.  Lynn avers that he discovered emails suggesting racial bias and illegal

---

[1] Hubbell's declaration reads 2010, but the context shows this was a typographical error.

"job action against Jody Thulin. . . ."  In July, 2009, Hubbell hired an outside consultant, to whom Lynn was instructed to give "full 'administrative rights' and control over [Gateway's] email system."  Believing that Gateway officials were trying to "erase[] or manipulate[]" the email system "to create alleged security leaks," Lynn made a backup copy of the emails.  He also provided a copy to Thurbon.

Upon learning of the existence of the emails and the facts regarding their acquisition, Thurbon conducted "certain legal research regarding [Lynn's] possession and potential use of the emails in his Federal District Court action."  Thurbon concluded that Lynn acquired the emails "during the course and scope of his employment with Gateway."  Thurbon believed that "Lynn had authorized access to the emails as part of his job duties," including "full administrative control and discretionary decision making in undertaking steps to back up and preserve [Gateway] records. . . ."  Based on his research, Thurbon determined that "Lynn had lawfully and properly accessed the emails . . . and properly backed up the system and was entitled to possess the back up copy . . ."

"Sometime right after June 14, 2010," Lynn also informed Thurbon that there were emails that could support Thulin's case.  Thurbon then arranged for Thulin to come to his office to review the emails.  Thulin spent roughly "four hours reviewing emails and identified 146 pages" that she believed were relevant.

Lynn testified in his state court deposition that "all e-mail traffic regarding school accounts is school property and can be reviewed if necessary[.]"  Gateway's Job Description for Lynn's position provided that Lynn was to perform his duties "[u]nder the general direction of the Superintendent."  Lynn

was asked to review his job description for language that gave him the "right and sole discretion to review e-mails including those of the superintendent or board members[.]"   Lynn answered, generally, that he was responsible for establishing and maintaining "standards of security" and for setting up user accounts and access rights.  He admitted that nothing else in his job description gave him unfettered authority to review emails.  Also, Lynn acknowledged that "in terms of reviewing emails," he was "the designee to do that *if* Mr. Strohmayer or the superintendents ask[ed him] to do it. . . ." (Emphasis added).

Strohmayer and Hubbell both stated in their declarations that they did not authorize Lynn's unfettered access to Gateway's email system.  Strohmayer recalled giving Lynn authorization to access Gateway employees' emails only on two occasions.  The emails produced by Thulin and Lynn "would not have been included" in those authorizations, and Lynn was never given "authority to access any of the emails contained in either production. . . ."  Lynn was never given "blanket authority to view emails of employees[,]" so he "never should have been reviewing [the] emails" at issue. Hubbell stated that "[i]n 2009 and 2010, none of [the emails] were knowingly released by [Gateway] to anyone other [than] the recipients . . ."  Hubbell "never authorized release of any of these documents to anyone other than the recipients . . ."

Ultimately, the state court determined that Lynn was not authorized to possess or disseminate the emails, and enjoined Thurbon and Thulin from using the emails in state court proceedings.  Thurbon later used the knowledge gained from the emails to request production of emails which were otherwise covered by the injunction.  Upon learning that the extent of copied emails was much greater than Gateway had

realized, Gateway filed another action in state court to recover all emails possessed by Lynn.

The state court issued an emergency restraining order, which would become a preliminary injunction, again prohibiting use of the questionably-obtained emails. After discovering that Thurbon continued to use the knowledge gained from the emails to prepare a public records request, Gateway obtained two orders to show cause why Thurbon was not in contempt of the injunctions. Hearings on the orders were consolidated, and the state court judge found five willful violations by Thurbon. Thurbon was sanctioned in the amount of $2,500.

In the meantime, Lynn filed his federal lawsuit. Following a hearing, the district court determined that "Lynn stole 39,312 emails" and "did not make a public records request to obtain the emails. . . ." The court found that "he really had absolutely no authority for doing what he did. . . ." The court opined that "what a careful lawyer . . . should have done . . . is the minute that these [emails] were turned over to him, he should have hired criminal counsel for Mr. Lynn. He should have advised Mr. Lynn of his Fifth Amendment rights. He should have advised Mr. Lynn of possible Penal Code violations[,]" but "[h]e did none of that." "[E]ven more shocking," said the court, is that Thurbon "actually used the emails in this other lawsuit, creating a clear conflict of interest for him now between his two clients. . . ."

The district court noted that "at least eight violations of professional conduct" had been raised. Although the court denied Gateway's request to dismiss the lawsuit completely, Thurbon and his firm were disqualified from further participation in the case. The court also ruled "that none of

the emails which were stolen can be used in any way in this lawsuit." The court memorialized these rulings in an order, and Thurbon timely filed a Notice of Appeal.**[2]** As a threshold issue, we must determine whether we have jurisdiction to consider this appeal.

## II. STANDARD OF REVIEW

"We consider our jurisdiction de novo." *Metabolic Research, Inc. v. Ferrell*, 693 F.3d 795, 798 (9th Cir. 2012) (citation omitted).

## III.    DISCUSSION

As an appellate court, we only have jurisdiction over final judgments. *See* 28 U.S.C. § 1291. An exception to the final judgment requirement is made for a collateral order. *See United States v. Tillman*, 756 F.3d 1144, 1149 (9th Cir. 2014). A collateral order is one that is conclusive, resolves an important question that is separate from the merits of the underlying case, and is effectively unreviewable on appeal. *See id.* The United States Supreme Court has explicitly held that "orders disqualifying counsel in civil cases . . . are not collateral orders subject to appeal as 'final judgments' within the meaning of 28 U.S.C. § 1291. The Court of Appeals lack[s] jurisdiction to entertain [such an] appeal . . ." *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 440–41 (1985) (citation omitted).

---

**[2]** Thurbon challenges only the disqualification and findings of ethical violations in this appeal. While this appeal has been pending, Lynn's wrongful termination case has been continued in the district court.

In *Cunningham v. Hamilton Cnty., Ohio*, 527 U.S. 198 (1999), the Supreme Court considered whether the collateral order doctrine applies to a sanctions order coupled with disqualification of an attorney. *See id.* at 200–01. The Supreme Court explained that it is unlikely that a sanctions order can be reviewed separately from the merits. *See id.* at 205. In addition, the Court noted its ruling in *Richardson-Merrell* that an order disqualifying an attorney was not a final decision subject to appeal. *See id.* at 207. The rationale of *Cunningham* leads to the conclusion that a sanctions order coupled with disqualification of counsel is doubly unappealable. *See id.* at 205–07. Indeed, Thurbon conceded during oral argument that, to the extent the sanctions and disqualification rulings are intertwined, we lack jurisdiction.

Nevertheless, Thurbon argues that *United States v. Talao*, 222 F.3d 1133 (9th Cir. 2000), provides us with appellate jurisdiction based on the sanctions order. In *Talao*, a government attorney appealed a district court order finding that she had violated a rule of ethical conduct and that this violation warranted a referral of her misconduct to the state bar, and an instruction informing the jurors in an ongoing criminal case that they could take her misconduct into account when assessing a particular witness's credibility. *See id.* at 1136. We held that this order was *per se* a sanction, and hence appealable, because "the district court made a finding and reached a legal conclusion that [the government attorney] knowingly and wilfully violated a specific rule of ethical conduct." *Id.* at 1138. We have endorsed this standard in distinguishing between a criticism and a reprimand, although other circuits have adopted slightly different standards for determining when an attorney may in his or her own right appeal an order. *See United States v. Ensign*, 491 F.3d 1109, 1117 (9th Cir. 2007). Thus, in *Talao*, we focused on whether

the court's verbal reprimand rose to the level of a sanction rather than on whether the sanction constituted a final order subject to appeal. *See id.* at 1138. Notably, the *Talao* decision fails to mention either *Richardson-Merrell* or *Cunningham* in its analysis. Indeed, *Talao* does not discuss the interlocutory nature of the appeal whatsoever, other than to recognize that the sanctions appeal was consolidated for consideration with the government's mandamus petition to prevent the district court from giving its proposed remedial instruction. *See Talao*, 222 F.3d at 1137. In such a circumstance, where the prior case did not delve into the issue at hand, we have not considered ourselves bound to reach the same outcome. *See V.S. ex rel. A.O. v. Los Gatos-Saratoga Joint Union High Sch. Dist.*, 484 F.3d 1230, 1232 n.1 (9th Cir. 2007). Moreover, we have not extended *Talao*'s holding beyond its limited facts where a sanction imposed against government counsel may affect the outcome of an underlying criminal proceeding. *See Talao*, 222 F.3d at 1135; *see also Stanley v. Woodford*, 449 F.3d 1060, 1065 (9th Cir. 2006) (relying upon *Cunningham* in concluding that an attorney may not pursue an interlocutory appeal of a sanctions order). In addition, we have recognized our lack of jurisdiction to consider an interlocutory appeal of disqualification only. *See Am. Prot. Ins. Co. v. MGM Grand Hotel-Las Vegas, Inc.*, 765 F.2d 925, 926 (9th Cir. 1985) (citing *Richardson-Merrell*, 472 U.S. at 424). We are persuaded that we lack jurisdiction over this appeal.

**APPEAL DISMISSED.**