[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

No. 12-16542

D.C. Docket No. 2:11-cv-00145-WCO

PLAINTIFF A,
PLAINTIFF B,
PLAINTIFF C,
PLAINTIFF D,

Plaintiffs-Appellees,

versus

RICHARD WAYNE SCHAIR,
WET-A-LINE TOURS, LLC,

Defendants-Appellants.

Appeal from the United States District Court for
the Northern District of Georgia

Before CARNES, Chief Judge, HULL and GARZA,* Circuit Judges.

*Honorable Emilio M. Garza, United States Circuit Judge for the Fifth Circuit, sitting by designation.

HULL, Circuit Judge:

This appeal involves claims based on the international sex trafficking of children. Appellees-Plaintiffs A, B, C, and D (collectively "the plaintiffs") sued Appellants-Defendants Richard W. Schair ("Schair"), a United States citizen, and his company, Wet-A-Line Tours, LLC, (collectively "the defendants") for coercing the plaintiffs into performing sexual acts with defendant Schair and his clients, in violation of the Victims of Trafficking and Violence Protection Act of 2000, 18 U.S.C. § 1591, et seq. ("TVPA"), as amended by Trafficking Victims Protection Reauthorization Act of 2003, Pub. L. No. 108–193, 117 Stat. 2875.

Because the U.S. Department of Justice was conducting a criminal investigation into the same conduct alleged in the plaintiffs' complaint, the district court stayed this civil action pursuant to 18 U.S.C. § 1595(b)(1). After that U.S. criminal investigation ended, the district court granted the plaintiffs' motion to lift the stay of their civil action.

The defendants bring this interlocutory appeal from the district court's order lifting the stay of the plaintiffs' civil action against the defendants. The first and, as it turns out, the last issue we need to address is whether we have jurisdiction to review the stay order. Because the district court's order is neither a final order

2

under § 1291 nor appealable under the collateral order doctrine, we dismiss the defendants' appeal for want of appellate jurisdiction.

## I.  BACKGROUND

In June 2011, the plaintiffs filed a civil complaint alleging that defendant Schair engaged in for-profit "sex tourism" in the Amazon River Basin in Brazil through his boat touring company, defendant Wet-A-Line Tours.  Specifically, the plaintiffs alleged that the defendants' agents and employees recruited young, impoverished Brazilian women, many of whom were under 18 years of age, to accompany the defendants' customers on the boat tours.  Once on the boat, these young women were allegedly coerced into performing sexual acts with defendant Schair and his customers.

The plaintiffs allege that the defendants' actions violated 18 U.S.C. § 1591, which is a section of the TVPA that criminalizes sex trafficking of children.  The plaintiffs brought their suit pursuant to 18 U.S.C. § 1595, which authorizes sex trafficking victims to bring civil actions against those who violate the TVPA's criminal provisions.  The plaintiffs seek compensatory and punitive damages under § 1595.

In addition to the plaintiffs' civil suit, the defendants' alleged acts led to criminal investigations in the United States and Brazil.

3

In July 2011, defendant Schair moved for a mandatory stay of the plaintiffs' civil action, pursuant to 18 U.S.C. § 1595(b), because of the pending U.S. and Brazilian criminal investigations. Section 1595(b)(1) states, "Any civil action filed under [§ 1595] shall be stayed during the pendency of any criminal action arising out of the same occurrence in which the claimant is the victim." To support his motion for a stay, defendant Schair provided the district court with evidence of the ongoing U.S. and Brazilian criminal investigations.

The plaintiffs acknowledged that there were two active criminal investigations into defendant Schair's conduct. Because of the ongoing U.S. investigation, the plaintiffs did not oppose the entry of a stay under § 1595(b).

The district court found that, in light of the ongoing U.S. investigation, § 1595(b) mandated the entry of a stay. Accordingly, in August 2011, the district court entered an order staying the plaintiffs' civil action until the domestic criminal action ended. Because it was unnecessary to do so, the district court did not address whether the ongoing Brazilian investigation also required a stay under § 1595(b).

In July 2012, almost one year after the district court's order staying the plaintiffs' civil action, the plaintiffs moved to lift the stay based on a perceived lack of prosecution by the U.S. government. The defendants opposed the

4

plaintiffs' motion to lift the stay. First, the defendants argued that there was no evidence that the U.S. investigation had ended. Second, the defendants claimed that § 1595(b) mandated a stay as long as there was any pending domestic or foreign prosecution or investigation arising out of the same occurrence in which the plaintiffs were the victims. And, because the Brazilian prosecution was ongoing, the defendants asserted that § 1595(b) mandated that the stay of the U.S. civil action remain in effect.

In October 2012, the district court held oral argument on the plaintiffs' motion to lift the stay. In November 2012, the plaintiffs filed a status report that stated, "Defendants' counsel has informed Plaintiffs' counsel that he has been told that the U.S. Department of Justice has decided not to prosecute the Defendants."

Ultimately, the district court found that the information relayed in the plaintiffs' November 2012 status report "conclusively establishe[d] that the [domestic] federal criminal action [was] no longer pending against the defendants." The district court then concluded, "The statutory language and the legislative intent underlying the TVPA and its stay provision make clear that the TVPA does not mandate a stay of a civil case while a foreign criminal prosecution is ongoing" (emphasis added). Given this conclusion, the district court granted the plaintiffs' motion to lift the court's prior stay of the civil action.

5

The defendants bring this interlocutory appeal from the district court's order lifting the stay. For the purposes of this appeal, it is undisputed that the U.S. criminal investigation has ended.

## II. DISCUSSION

Before we can proceed to the merits of this appeal, we must examine whether we have appellate jurisdiction to do so. To determine our jurisdiction, we must answer the question of whether the district court's decision to lift a stay previously imposed pursuant to § 1595(b)(1) can be challenged in an interlocutory appeal.[1]

## A.    Final Decisions Under 28 U.S.C. § 1291

We start with 28 U.S.C. § 1291, which states, "The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts of the United States . . . , except where a direct review may be had in the Supreme Court." For purposes of § 1291, a final decision or final judgment "is normally deemed not to have occurred until there has been a decision by the District Court

---

[1]Of course, we have statutory jurisdiction over appeals from certain interlocutory orders and decrees under 28 U.S.C. § 1292. But, the defendants' notice of appeal and supplemental brief do not rely on § 1292. And, the defendants did not follow § 1292's certification procedure. Rather, the defendants rely on § 1291 and the related collateral order doctrine, which we now examine.

We do not mean to imply that it would have been proper to certify this appeal under § 1292(b), which requires, among other things, that an immediate appeal from the order "may materially advance the ultimate termination of the litigation." See 28 U.S.C. § 1292(b).

6

that ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Midland Asphalt Corp. v. United States, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (internal quotation marks omitted); see also Cunningham v. Hamilton Cnty., 527 U.S. 198, 203–04, 119 S. Ct. 1915, 1919–20 (1999) (discussing the final judgment rule).

This Court repeatedly has stated the usual rule that the denial of a motion to stay is not a final decision that is appealable under § 1291. See, e.g., Anderson v. United States, 520 F.2d 1027, 1028 (5th Cir. 1975) (finding one federal court's order denying a motion to stay pending resolution of a related action in a different federal court "unappealable" under § 1291); Wallace v. Norman Indus., Inc., 467 F.2d 824, 826 (5th Cir. 1972) (same); H. W. Caldwell & Son, Inc. v. U.S. ex rel. John H. Moon & Sons, Inc., 407 F.2d 21, 22 (5th Cir. 1969) (stating that, where the defendant requested a stay because the contract in dispute required exhaustion of administrative remedies prior to filing suit, "it is clear that the overruling of the motion to stay was not a final decision appealable under 28 U.S.C. § 1291");[2] cf. Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 10 n.11, 103 S. Ct. 927, 934 n.11 (1983) ("[T]he usual rule [is] that a stay is not ordinarily a

_____

[2]The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

7

final decision for purposes of § 1291, since most stays do not put the plaintiff 'effectively out of court.' "); Miccosukee Tribe of Indians of Florida v. S. Fla. Water Mgmt. Dist., 559 F.3d 1191, 1194 (11th Cir. 2009) (involving the grant of a stay and pointing out that "[o]rdinarily a stay order is not a final decision for purposes of § 1291").

By the same token, an order lifting a stay is also generally not a final decision that is appealable under § 1291. Appreciating this reality, the defendants argue that this Court has appellate jurisdiction pursuant to the collateral order doctrine. See Cohen v. Beneficial Indus. Loan Corp., 337 U.S. 541, 546–47, 69 S. Ct. 1221, 1225–26 (1949) (recognizing the collateral order doctrine for the first time). Thus, we set forth the collateral order doctrine and determine whether it applies to the order lifting the stay here.

## B. Collateral Order Doctrine

"Using a 'practical construction' of finality, . . . the Supreme Court has blazed through the jurisdictional thicket several paths by which a stay order may be considered a final decision." Miccosukee Tribe, 559 F.3d at 1195. One such path is Cohen's collateral order doctrine. See id. at 1195, 1198.

This judicially-developed doctrine is a "practical construction" of § 1291's "final decision" rule that "accommodates a small class of rulings, not concluding

8

the litigation, but conclusively resolving claims of right separable from, and collateral to, rights asserted in the action." Will v. Hallock, 546 U.S. 345, 349, 126 S. Ct. 952, 957 (2006) (internal quotation marks omitted). For the collateral order doctrine to apply, the collateral issues raised in the interlocutory appeal must be "too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated." Cohen, 337 U.S. at 546, 69 S. Ct. at 1225–26; see also Will, 546 U.S. at 349, 126 S. Ct. at 957.

The United States Supreme Court has distilled Cohen's requirements for a collateral order appeal to a three-part test. Will, 546 U.S. at 349, 126 S. Ct. at 957. To satisfy the Cohen test, the district court's order must "[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] be effectively unreviewable on appeal from a final judgment." Id. (quotation marks omitted); Miccosukee Tribe, 559 F.3d at 1198. "[E]ach part of the Cohen test is a critical condition for jurisdiction." Miccosukee Tribe, 559 F.3d at 1199; Feldspar Trucking Co. v. Greater Atlanta Shippers Ass'n, 849 F.2d 1389, 1392 (11th Cir. 1988) ("If any one criteria is not met, jurisdiction cannot be invoked . . . .").

9

The Cohen test's three "stringent" conditions keep the group of collateral orders subject to the doctrine "narrow and selective in its membership," Miccosukee Tribe, 559 F.3d at 1199, and prevent the collateral order doctrine from "overpower[ing] the substantial finality interests § 1291 is meant to further," Will, 546 U.S. at 350, 126 S. Ct. at 957. See also Mohawk Indus., Inc. v. Carpenter, 558 U.S. 100, 106, 130 S. Ct. 599, 605 (2009) ("In applying Cohen's collateral order doctrine, we have stressed that it must 'never be allowed to swallow the general rule that a party is entitled to a single appeal, to be deferred until final judgment has been entered.' " (quoting Digital Equip. Corp. v. Desktop Direct, Inc., 511 U.S. 863, 868, 114 S. Ct. 1992, 1996 (1994))).

The finality interests embodied in § 1291 emphasize the district court's central role in managing ongoing litigation and seek to avoid the inevitable creation of inefficiencies if an appellate court could review issues before the district court had an opportunity to address all of the case's often interrelated questions. Mohawk Indus., 558 U.S. at 106, 130 S. Ct. at 605 (emphasizing the limits of the collateral order doctrine and recognizing that "[p]ermitting piecemeal, prejudgment appeals . . . undermines efficient judicial administration and encroaches upon the prerogatives of district court judges, who play a special role in managing ongoing litigation" (internal quotation marks omitted)). But, the finality

10

interests protect more than judicial resources.  The Supreme Court has cautioned

that the stringent conditions necessary for the collateral order doctrine to apply

serve "the sensible policy of avoiding the obstruction to just claims that would

come from permitting the harassment and cost of a succession of separate appeals

from the various rulings to which a litigation may give rise."  Will, 546 U.S. at

349–50, 126 S. Ct. at 957 (internal quotation marks omitted and alterations

adopted).

## C.    District Court's Order Lifting the Stay

The defendants argue that all three prongs of the Cohen test are met here

and, thus, the district court's order lifting the mandatory stay is an appealable

"collateral order."  In response, the plaintiffs focus mainly on the defendants'

failure to satisfy the second prong of the Cohen test.  We agree that the defendants

have not shown that the Cohen test's second prong is satisfied and explain why.[3]

As set forth above, Cohen's second requirement "insists upon important

questions separate from the merits."  Mohawk Indus., 558 U.S. at 107, 130 S. Ct. at

---

[3]The parties agree that the Cohen test's first prong is met because the district court is unlikely to revisit its order lifting the stay.  And, although the plaintiffs principally argue that the Cohen test's second prong is not met, they do not concede that the third prong is met.

Because this case is readily resolved on the Cohen test's second prong, we need not address the test's first and third prongs to determine that we lack appellate jurisdiction here.  See Mohawk Indus., 558 U.S. at 108, 130 S. Ct. at 606 ("Because we agree with the Court of Appeals that [the] collateral order appeals [at issue here do not satisfy Cohen's third prong] . . . , we do not decide whether the other Cohen requirements are met.").

11

605 (internal quotation marks omitted) (emphasis added).  The order lifting the stay must "raise an 'important issue,' which means that an important right is at stake."  Miccosukee Tribe, 559 F.3d at 1199.

The importance of the right asserted is "a significant part of [the] collateral order doctrine."  Id. (quoting Will, 546 U.S. at 352, 126 S. Ct. at 959) (quotation marks omitted).  "Examples of 'important issues' significant enough to justify immediate appellate jurisdiction under the [second prong of the] collateral order doctrine include denials of the defenses of absolute presidential immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy."  Id. (citing Will, 546 U.S. at 352, 126 S. Ct. at 959).  "In all of these cases, 'a substantial public interest' existed in taking an immediate appeal."  Id. (quoting Will, 546 U.S. at 353, 126 S. Ct. at 959) (emphasis added).

To date, an interlocutory order has been deemed "important" enough to justify Cohen review only where "some particular value of a high order," such as "honoring the separation of powers, preserving the efficiency of government . . . , [or] respecting a State's dignitary interests" was "marshaled in support of the interest in avoiding trial" and the appellate court determined that denying review would "imperil" that interest.  Will, 546 U.S. at 352–53, 126 S. Ct. at 959; see also Digital Equip., 511 U.S. at 879, 114 S. Ct. at 2002 (noting that an interest

12

"qualifies as 'important' in <u>Cohen</u>'s sense" if it is "weightier than the societal interests advanced by the ordinary operation of final judgment principles").

Here, the defendants provide little explanation as to why allowing the plaintiffs' civil case to proceed puts an important issue at stake—much less a <u>substantial public interest</u>. The defendants' main argument is that—absent a stay—defendant Schair may have to assert his Fifth Amendment right against self-incrimination in the U.S. civil action to avoid hurting himself in the pending Brazilian criminal case and that invoking that U.S. right will (somehow) cause him irreversible injury in the Brazilian prosecution or cause an adverse inference to be drawn against him in this civil action. Defendants' argument wholly fails for several reasons.

First, the TVPA's mandatory stay provision in § 1595(b) was not designed to help a defendant delay a U.S. civil action for sex trafficking violations. Instead, as the TVPA's legislative history indicates, the mandatory stay provision was added to § 1595 to alleviate the U.S. Department of Justice's concern that civil suits could hinder a <u>domestic</u> prosecutor's ability to try criminal cases "unfettered by the complications of civil discovery." <u>See</u> H.R. Rep. No. 108–264(II), at 17 (2003). There is no reason to believe that § 1595(b)'s stay provision was intended

13

to protect an alleged sex-trafficking defendant's rights or interests in any way, much less in an <u>important</u> way.

Second, when a person commits a criminal act that also gives rise to a civil action, that person must necessarily decide whether to invoke the right against self-incrimination in the civil action in order to avoid consequences in a criminal case. Whether the individual defendant chooses to invoke that right, and the consequences of doing so, are not "important issues" that involve a "substantial public interest." Cf. <u>United States v. Lot 5, Fox Grove, Alachua Cnty., Fla.</u>, 23 F.3d 359, 364 (11th Cir. 1994) ("[A] blanket assertion of the privilege [against self-incrimination] is an inadequate basis for the issuance of a stay. Rather, a court must stay a civil proceeding pending resolution of a related criminal prosecution only when 'special circumstances' so require in the 'interests of justice.' " (citation omitted)). That is especially true when a civil defendant is invoking his right against self-incrimination in a U.S. civil action to help him in a foreign prosecution. See, e.g., <u>United States v. Balsys</u>, 524 U.S. 666, 669, 118 S. Ct. 2218, 2221 (1998) (holding that "concern with foreign prosecution is beyond the scope of the Self-Incrimination Clause").

Third, the limited benefits of applying "the blunt, categorical instrument of § 1291 collateral order appeal" to orders lifting stays in § 1595 cases simply do not

14

justify immediate appeal.  See Mohawk Indus., 558 U.S. at 112, 130 S. Ct. at 608

(quotation marks omitted).  Permitting parties to undertake successive, piecemeal

appeals every time a § 1595(b) stay is lifted would unduly delay the resolution of

district court civil litigation for sex trafficking and needlessly burden the appellate

courts.  Cf. id. (raising similar concern in the context of orders adverse to the

attorney-client privilege); Cunningham, 527 U.S. at 209, 119 S. Ct. at 1922

(expressing similar concern in the context of orders fining attorneys for discovery

violations).

In sum, because the order lifting the stay in this case does not present "an

important issue," the second prong of the Cohen test is not satisfied, and this Court

lacks appellate jurisdiction over the defendants' interlocutory appeal.  Our

conclusion is consistent with our charge to keep a tight rein on the types of orders

appealable under the collateral order doctrine.  Mohawk Indus., 558 U.S. at 113,

130 S. Ct. at 609 (reiterating "that the class of collaterally appealable orders must

remain narrow and selective in its membership" (internal quotation marks

omitted)).  We are bound to maintain "a healthy respect for the virtues of the final-

judgment rule."  Id. at 106, 130 S. Ct. at 605; see also Will, 546 U.S. at 350, 126 S.

Ct. at 957–58.

15

## III.  CONCLUSION

Because the collateral order doctrine does not extend to orders lifting stays in § 1595 cases, we dismiss the defendants' interlocutory appeal for lack of appellate jurisdiction.

**DISMISSED**.