IN THE SUPREME COURT
OF THE VIRGIN ISLANDS

**FILED**

March 11, 2025 11:09 AM
SCT-Civ-2021-0178
VERONICA HANDY, ESQUIRE
CLERK OF THE COURT

**For Publication**

# IN THE SUPREME COURT OF THE VIRGIN ISLANDS

| | |
|---|---|
| IN RE: THE ESTATE OF FELIPE GARCIA <br> Appellant, <br><br> JULIA G. SERGENT, <br> Plaintiff-Appellant, <br><br> v. <br><br> FELIPA BIAMONTE, <br> Defendant-Appellee. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

S. Ct. Civ. No. 2021-0178
Re: Super. Ct. Civ. No. 9RV/2021 (STX)

On Appeal from the Superior Court of the Virgin Islands
Division of St. Croix
Superior Court Judge: Hon. Jessica Gallivan

Argued: June 14, 2022
Filed: March 11, 2025

Cite as: 2025 V.I. 8

BEFORE: **RHYS S. HODGE**, Chief Justice; **MARIA M. CABRET**, Associate Justice; and **IVE ARLINGTON SWAN**, Associate Justice.

APPEARANCES:

**Mark L. Milligan, Esq.**
Law Office of Mark Milligan
St. Croix, U.S.V.I.
   *Attorney for Appellant,*

**Yvette D. Ross-Edwards, Esq.**
Law Office of Yvette D. Ross-Edwards
St. Croix, U.S.V.I.
   *Attorney for Appellee.*

## OPINION OF THE COURT

**SWAN, Associate Justice**.

¶1     Appellant Julia G. Sergent ("Sergent") challenges the dismissal with prejudice of her interlocutory appeal by the Superior Court Appellate Division ("Appellate Division").[1] Sergent's appeal raised issues relating to the order of the Superior Court Magistrate Division ("Magistrate Division") disqualifying Attorney Mark L. Milligan ("Milligan") from representing her in a probate case. For the reasons elucidated below, we reverse the Superior Court's dismissal and remand the case with instructions to the Superior Court to direct the Magistrate Division to conduct an evidentiary hearing on the issue of Milligan's disqualification.

### I.     FACTS AND PROCEDURAL HISTORY

¶2     On April 14, 2020, Felipe Garcia ("Garcia"), a resident of St. Croix, U. S. Virgin Islands, died in Atlanta, Georgia following a battle with prostate cancer. On April 13, 2020, the day before his death and while hospitalized battling Stage IV prostate cancer, Garcia executed a last will and testament in which Sergent, Garcia's sister, was nominated as the estate's executrix and identified as one of the estate's principal beneficiaries. At the time of his death, Garcia owned numerous

---

[1] Although Sergent labeled the appeal interlocutory, it should be noted that currently neither the Virgin Islands Code nor this jurisdiction's court rules provide for interlocutory appeals from the Superior Court's Magistrate Division to the Appellate Division of the Superior Court. Moreover, for an appeal to be interlocutory, the judge or magistrate who enters the order normally must certify that it is interlocutory and subject to immediate appeal without the trial court rendering a final decision on the merits for the underlying cause of action. *See Mohansingh v. Hess Corp.*, No. SX-2006-CV-00231, 2022 WL 558092, at *1 (V.I. Super. Ct. Feb. 16, 2022) ("4 V.I.C. § 33(c) . . . 'grants full authority to the trial judge to issue an opinion' certifying questions for interlocutory appeal when the judge determines that the prerequisites are met. . . . Absent the issuance of a favorable opinion, 'a civil interlocutory appeal cannot ensue.' . . . 'No litigant has a right to be heard on whether the trial court should enter an order for interlocutory appeal, because such an appeal is dependent on the trial judge's opinion.'") (citations omitted).

properties in St. Croix and had several bank accounts. When appraised, Garcia's estate was valued at approximately one million dollars.

¶3     On October 27, 2020, Sergent filed an amended petition in the Superior Court's Magistrate Division to probate Garcia's will and appoint her as executrix. In the amended petition, Sergent disclosed Felipa Garcia Biamonte ("Biamonte") as Garcia's only child and legal heir, and she retained Milligan as her attorney as well as the estate's legal counsel. On the same day, Sergent also filed a motion to issue a citation which asked the court to communicate with Biamonte, regarding her failure to execute a waiver that was emailed to her on October 20, 2020. The October 20, 2020 email also contained a cover letter, a copy of Garcia's will, a copy of the probate petition, and a copy of Garcia's death certificate.

¶4     On November 18, 2020, the court issued the citation which instructed Biamonte to appear before the court on January 15, 2021 to show cause why the probate petition should not be granted.

¶5     On January 12, 2021, Biamonte sent a letter to the court in which she proclaimed her disappointment with the circumstances surrounding her father's death, her suspicions regarding the illegitimacy of his will, and her inability to attend the January 15, 2021 hearing because of professional responsibilities or commitments that were exacerbated by the global COVID pandemic. Specifically, in the letter, Biamonte stated that she did not initially know her father because her mother never identified or discussed him with her. However, when she became an adult, Biamonte searched for Garcia and ultimately located him in 1999. Thereafter, the two shared a loving relationship with her father visiting her and her daughters often at her home in New York. Biamonte further stated that Garcia showered her daughters with gifts and even paid for a family trip to Disney Land in California. However, Biamonte alleged that no one informed her of Garcia's demise, and that she only learned of his passing two months after his death by conducting an

Internet search. Subsequently, Biamonte's displeasure with the circumstances of her father's death increased when she received documents from Milligan which informed her that she and her daughters were basically disinherited from Garcia's estate. Although Biamonte procured legal representation for the purpose of "renegotiating" the terms of Garcia's will, Milligan notified her that his clients were disinterested in negotiating the will's terms. Therefore, Biamonte refused to sign the waiver based upon the reasons enumerated in her letter.

¶6     On January 27, 2021, the court entered an order that rescheduled the January 15, 2021 hearing to February 12, 2021 because of Biamonte's inability to attend the January 15, 2021 hearing.

¶7     On February 1, 2021, Biamonte sent another letter to the Magistrate Division in which she stated her intent to contest Garcia's will because of her persistent doubts regarding his mental and physical well-being at the time of the will's execution, his possible lack of testamentary capacity, and the potential that he was exposed to undue influence during the will's preparation and execution. Biamonte informed the court that she was attempting to secure legal counsel and asked the court to postpone the February 12, 2021 hearing to allow her additional time to retain counsel.

¶8     On February 10, 2021, Sergent filed an opposition to Biamonte's request for a continuance. The opposition stated that Biamonte failed to comply with Rule 7 of the Virgin Islands Rules for Probate and Fiduciary Proceedings (hereinafter "Virgin Islands Probate Rules"), which stipulates that a party contesting a will must file a declaration for a will contest. Sergent's opposition also asserted that Biamonte failed to offer any evidentiary support for the assertions contained in her February 1, 2021 letter.[2] Accordingly, Sergent moved the court to deny Biamonte's request for a

---

[2] After Biamonte sent the February 1, 2021 letter, she sent a third letter on February 5, 2021 in which she apparently asked the court for a 30 to 60 day continuance so she could procure legal counsel to contest the will pursuant to the

continuance and to grant Sergent's probate petition as well as her appointment as the estate's executrix.

¶9    On February 11, 2021, the court issued an order that rescheduled the February 12, 2021 hearing to May 21, 2021 to provide Biamonte with additional time to secure legal counsel and to formally comply with the Virgin Islands Probate Rules.

¶10    On March 24, 2021, Attorney Yvette Ross-Edwards ("Ross-Edwards") filed a notice of appearance on Biamonte's behalf. Subsequently, on May 10, 2021, Biamonte filed a declaration of will contest. In the declaration, Biamonte asserted that Garcia's will was dubious for a myriad of reasons, including the uncertainty of whether Garcia knew and understood the scope of his estate, his heirs, and his will's content. Additionally, Biamonte raised issues of whether the witnesses signed the will in each other's presence and observed Garcia sign the will; whether Garcia was coerced into signing the will; and whether Garcia possessed the requisite mental competency needed to execute a will.

¶11    On May 12, 2021, Biamonte filed a motion to reschedule the May 21, 2021 hearing. In the motion, Biamonte argued that the May 21, 2021 hearing potentially violated Rule 7 of the Virgin Islands Probate Rules because Sergent may not have had sufficient time to file an answer in the will contest before the May 21, 2021 hearing. The motion also asserted a desire to conduct discovery because, as Rule 7 states, will contests should proceed like all civil cases after the respondent files an answer.

¶12    On May 17, 2021, Sergent filed an answer to Biamonte's will contest.

---

Virgin Islands Probate Rules. Also, while we refer to the reviewing Superior Court judge as the "Appellate Division" for convenience and consistency in this case, we note that amendment to Superior Court Rule 322 abolished the Appellate Division and provided for appeals from the Magistrate Division to judges of the Superior Court of the Virgin Islands. See Super. Ct. R. 322(a) (amended June 1, 2019).

¶13 On May 20, 2021, the court issued an order in which it canceled the May 21, 2021 hearing and scheduled a July 2, 2021 evidentiary hearing for the will contest.

¶14 On June 16, 2021, Biamonte filed a motion to reschedule the July 2, 2021 hearing. In the motion, Biamonte alleged that the July 2, 2021 evidentiary hearing on the will contest failed to provide sufficient time to conduct discovery. Biamonte further asserted that the July 2, 2021 hearing should be converted to a hearing on all outstanding motions and the establishment of a scheduling order for the completion of discovery.

¶15 On June 16, 2021, the Magistrate Division issued two orders in response to Biamonte's motion. First, the court entered an order to compel Sergent's participation in discovery.[3] Second, the court entered an order to convert the July 2, 2021 hearing into a hearing on oral arguments for all outstanding motions and to establish a scheduling order for the completion of discovery.

¶16 On June 22, 2021, Sergent filed a motion for reconsideration of the court's June 16, 2021 orders. In the motion, Sergent asserted that the court issued the ex-parte orders without allowing her sufficient time to respond to Biamonte's motions. Accordingly, Sergent claimed that the court orders were premature and, therefore, violated her due process rights. Although she acknowledged the court's ability to enter an order without a response or reply from litigants under Virgin Islands Civil Procedure Rule 6(f)(6),[4] Sergent noted that the court failed to identify in the orders whether Rule 6(f)(6) was the authority it employed to address Biamonte's motions. Furthermore, Sergent asserted that the court also failed to address in the orders whether discovery in probate cases was

---

[3] On June 16, 2021, Biamonte filed several motions including a notice of withdrawal of interrogatories and document requests, a notice of service of initial Rule 26 disclosures, a notice of re-service of interrogatories and document requests, and a motion to compel Sergent's participation during discovery. Biamonte filed the motion to compel because Sergent, through Milligan, allegedly refused to participate in discovery at a Rule 37(f) conference that was held on June 14, 2021. At that time, Sergent contended that discovery was inapplicable to probate proceedings.

[4] "Disposition of Motion. Nothing herein shall prohibit the court from ruling without a response or reply when deemed appropriate." V.I. R. Civ. P. 6(f)(6).

proper; whether ex-parte orders were appropriate under the circumstances; and whether it was permissible to convert the evidentiary hearing and to include oral arguments on pending motions. Sergent argued that the orders were therefore patently erroneous and should be vacated.

¶17 On July 14, 2021, the court entered an order that required both Biamonte's and Sergent's attorneys to file quarterly motions in order to receive their legal fees. The order also demanded that Milligan file with the court copies of his billing statements for the preparation of Garcia's will. Finally, the order stated that neither attorney could obtain fees from Garcia' estate without the court's prior approval.

¶18 To comply with the July 14, 2021 order but objecting to the submission on the basis of client confidentiality under Virgin Islands Rule of Professional Conduct 211.1.6,[5] Milligan begrudgingly filed with the court on August 20, 2021 a billing statement for the preparation of Garcia's will. The bill itemized various duties Milligan performed to draft Garcia's will. Particularly, the bill disclosed that Milligan charged Garcia's estate for the identification and evaluation of assets, a review of Garcia's health conditions, and preparation and transmission of a final draft of the will after necessary revisions.

¶19 On August 25, 2021, Biamonte supplemented her Rule 26 disclosures to include Milligan. The supplemental disclosure intimated that Milligan possessed personal knowledge of the

---

[5] "Confidentiality of Information. (a) A lawyer shall not reveal information relating to the representation of a client unless the client gives informed consent, the disclosure is impliedly authorized in order to carry out the representation or the disclosure is permitted by paragraph (b). (b) A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: (1) to prevent reasonably certain death or substantial bodily harm; (2) to prevent the client from committing a crime or fraud that is reasonably certain to result in substantial injury to the financial interests or property of another and in furtherance of which the client has used or is using the lawyer's services; (3) to prevent, mitigate or rectify substantial injury to the financial interests or property of another that is reasonably certain to result or has resulted from the client's commission of a crime or fraud in furtherance of which the client has used the lawyer's services; (4) to secure legal advice about the lawyer's compliance with these Rules; (5) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved; (6) to comply with other law or a court order." V.I. R. PROF'L CONDUCT. 211.1.6(a)-(b).

preparation and execution of Garcia's will and that his testimony may be needed at trial. As a result of identifying Milligan as a likely witness, Biamonte filed an August 25, 2021 motion to disqualify him from representing both Sergent and Garcia's estate. In the disqualification motion, Biamonte alleged that Milligan's representation of Sergent and Garcia's estate violated Virgin Islands Rule of Professional Conduct 211.3.7(a).[6] Specifically, Biamonte asserted that Milligan's knowledge pertained to a contested issue – principally, Garcia's mental acumen at the time he executed the will.

¶20 On September 15, 2021, Sergent filed an opposition to Biamonte's disqualification motion. In the opposition, Sergent alleged that Biamonte's motive in filing the disqualification motion was to unfairly preclude Milligan from litigating the case on Sergent's behalf. Sergent further alleged that it was unlikely that Biamonte would call Milligan as a witness because Milligan's testimony would likely be adverse to Biamonte's case. Third, Sergent asserted that the provisions of Rule 211.3.7(a) indicate that it is only applicable when an attorney needs to be both a witness and advocate at trial and, because no trial had been scheduled in this case, the rule was inapplicable. Finally, Sergent claimed that Biamonte failed to demonstrate that Milligan was a necessary witness as contemplated under Rule 211.3.7(a). Accordingly, Sergent requested that the court hold an evidentiary hearing to properly ascertain whether Milligan was a necessary witness and, therefore, properly address his disqualification especially considering the hardships that Milligan's disqualification would cause her and Garcia's estate.

---

[6] "A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless: (1) the testimony relates to an uncontested issue; (2) the testimony relates to the nature and value of legal services rendered in the case; or (3) disqualification of the lawyer would work substantial hardship on the client." V.I. R. PROF'L CONDUCT 211.3.7(a).

¶21 On September 23, 2021, the court entered an order granting Biamonte's disqualification motion. In the order, the court opined that Milligan's bills established that he was a critical participant in the preparation, drafting, and execution of Garcia's will. The court further opined that its duty was to ensure that Garcia understood that he was signing his will, that the witnesses signed the will because of Garcia's instructions to them, and that Garcia possessed the requisite mental faculties to execute the will. In granting the motion, the court reasoned that Biamonte had amended her initial Rule 26 disclosures to identify Milligan as a witness and that Milligan's disqualification would not cause substantial hardship on Sergent or Garcia's estate because the case was in its preliminary stages. Moreover, the court cited *Sekou v. Moorhead*, 72 V.I. 1048 (V.I. 2020) for the proposition that it may decide a disqualification motion without an evidentiary hearing. Thus, the court concluded in its September 23, 2021 order that Milligan had to be disqualified because Rule 211.3.7 prohibits an attorney from simultaneously being a witness and an advocate in the same contested matter.

¶22 On October 1, 2021, Sergent filed an interlocutory appeal in the Superior Court's Appellate Division disputing the Magistrate Division's September 23, 2021 order. In the appeal, Sergent argued that the Virgin Islands Supreme Court in *In re Drue*, 57 V.I. 524 (V.I. 2012) and *In re Rogers*, 56 V.I. 325 (V.I. 2012) decreed that an appellate court can perform interlocutory review even if the trial court had not issued a final order in the underlying matter. Therefore, Sergent enumerated nine distinct issues in the appeal which she urged the court to decide. Among the issues Sergent itemized were whether the magistrate abused his discretion in failing to conduct an evidentiary hearing, whether Biamonte sufficiently supported her contentions that Milligan was a necessary witness and his testimony was unobtainable elsewhere, and whether the record sufficiently supported the magistrate's finding that a trial in the case was imminent.

¶23    In a December 28, 2021 order, the Appellate Division dismissed Sergent's appeal on the ground that it lacked jurisdiction to entertain the appeal. The court reasoned that Sergent's appeal violated Superior Court Rule 322.1(a), which is known as the final judgment rule.[7] Therefore, because the order from which Sergent appealed failed to dispose of the underlying case, the Appellate Division dismissed Sergent's appeal with prejudice.

¶24    On December 29, 2021, Sergent perfected the instant appeal.

## II.    JURISDICTION

¶25    "The Supreme Court [has] jurisdiction over all appeals arising from final judgments, final decrees, and final orders of the Superior Court." 4 V.I.C. § 32(a). "An order that disposes of all claims submitted to the Superior Court is considered final for the purposes of appeal." *Jung v. Ruiz*, 59 V.I. 1050, 1057 (V.I. 2013) (citing *Matthew v. Herman*, 56 V.I. 674, 677 (V.I. 2012)). Because the Superior Court's December 28, 2021 order dismissing Sergent's appeal with prejudice disposed of all claims submitted for adjudication, the order is final and we exercise jurisdiction over Sergent's appeal.

## III.    STANDARD OF REVIEW

¶26    We review the trial court's factual findings for clear error and exercise plenary review over its legal determinations. *Thomas v. People*, 63 V.I. 595, 602-03 (V.I. 2015) (citing *Simmonds v. People*, 53 V.I. 549, 555 (V.I. 2010)). Moreover, "[w]hen reviewing decisions of the Appellate Division of the Superior Court, we typically consider the underlying rulings made by the magistrate only to the extent that they were adopted or affirmed by the Appellate Division of the

---

[7] "Appealable Decisions. Final orders or judgments of the Magistrate Division resolving completely the merits of cases which came before them pursuant to their original jurisdiction, as provided by 4 V.I.C. § 123(a), are immediately appealable to judges of the Superior Court of the Virgin Islands, as well as any interlocutory orders appealable by law." V.I. SUPER. CT. R. 322.1(a).

Superior Court." *Gardiner v. Diaz*, 58 V.I. 199, 204 (V.I. 2013) (citations omitted). "In most cases, we will decline to review directly the magistrate's rulings out of consideration for the 'unique relationship' between the Magistrate and Appellate Divisions of the Superior Court, and traditional appellate practices. . . . However, when we apply the same standard as the Appellate Division, we may, in the interests of judicial economy, [ignore] the Appellate Division's decision and directly review the magistrate's rulings." *Id.* at 204-05. (citations omitted).

## IV.   DISCUSSION

### A. Collateral Order Doctrine

¶27    On appeal, Sergent argues that the collateral order doctrine enables this Court to entertain her appeal as well as address the nine issues in her notice of appeal, which are the same nine issues she enumerated before the Superior Court's Appellate Division. Before addressing Sergent's contention that the collateral order doctrine applies to this case, we review the law of the collateral order doctrine.

¶28    In *In re Holcombe*, 63 V.I. 800 (V.I. 2015), we explained that appeals to this Court traditionally arise from final judgments of the Superior Court. "This finality requirement, commonly referred to as the final judgment rule, means that 'a party must ordinarily raise all claims of error in a single appeal following final judgment on the merits.'" *Enrietto v. Rogers Townsend & Thomas, PC*, 49 V.I. 311, 315 (V.I. 2007).

¶30 However, 4 V.I.C. § 33(b) through (c) contain specific exceptions to the final judgment rule that enable immediate appellate review of a trial court order.[8] One exception to the final judgment rule, not codified in 4 V.I.C. § 33(b)-(c), is the collateral order doctrine. It is a "judicially-created exception to the final judgment rule [that] applies to 'a small class of prejudgment orders which finally determine claims of right separable from, and collateral to, rights asserted in the action, and are too important to be denied review and too independent of the cause itself to require that appellate consideration be deferred until the whole case is adjudicated.'" *Holcombe*, 63 V.I. at 815 (citations omitted). To fall within the narrow confines of the collateral order doctrine, "an order must conclusively determine the disputed question; resolve an important issue completely

---

[8] "(b) Interlocutory review-civil. The Supreme Court of the Virgin Islands has jurisdiction of appeals from: (1) Interlocutory orders of the Superior Court of the Virgin Islands, or of the judges thereof, granting, continuing, modifying, refusing or dissolving injunctions, or refusing to dissolve or modify injunctions; (2) Interlocutory orders appointing receivers, or refusing orders to wind up receiverships or to take steps to accomplish the purposes thereof, such as directing sales or other disposals of property; (c) Whenever the Superior Court judge, in making a civil action or order not otherwise appealable under this section, is of the opinion that the order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of litigation, the judge shall so state in the order. The Supreme Court of the Virgin Islands may thereupon, in its discretion, permit an appeal to be taken from the order, if application is made to it within ten days after the entry of the order; except that application for an appeal hereunder may not stay proceedings, in the Superior Court unless the Superior Court judge or the Supreme Court or a justice thereof orders a stay of the proceedings. (d) Review-criminal. (1) In a criminal case an appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision, judgment, or order of the Superior Court dismissing an indictment or information or otherwise terminating a prosecution in favor of the defendant, as to any one or more counts, or any part thereof, except that no appeal shall lie where the double jeopardy clause of the United States Constitution or the Revised Organic Act prohibits further prosecution. (2) An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order of the Superior Court suppressing or excluding evidence or requiring the return of seized property in a criminal proceeding, not made after the defendant has been put in jeopardy and before the verdict or finding on an indictment or information, if the Attorney General conducting the prosecution certifies to the Superior Court judge that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of a fact material in the proceeding. The trial court shall adjourn or continue the trial until the appeal is resolved. The appeal shall be determined promptly. (3) An appeal by the Government of the Virgin Islands shall lie to the Supreme Court from a decision or order, entered by the Superior Court, granting the release of a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order granting release. The appeal shall be determined promptly. (4) An appeal by a defendant or person ordered detained pursuant to section 3504a, of title 5 of the Virgin Islands Code or other provision of law, shall lie to the Supreme Court from a decision or order, entered by the Superior Court, detaining a person charged with or convicted of an offense, or denying a motion for revocation of, or modification of the conditions of, a decision or order of detention. The appeal shall be determined promptly. (5) The appeal in all such cases shall be taken within thirty days after the decision, judgment or order has been rendered and shall be diligently prosecuted." 4 V.I.C § 33(b)-(d).

separate from the merits of the action; and must be effectively unreviewable on appeal from a final judgment." *Id. See also Richardson-Merrell Inc. v. Koller*, 472 U.S. 424, 431 (1985) (same); *Maddox v. St. Paul Fire & Marine Ins. Co.*, 70 Fed. Appx. 77, 81 (3d Cir. 2003) (same). Unequivocally, for the collateral order doctrine to apply, the challenged order must satisfy all three of these requirements and all are "stringently applied in light of the [United States] Supreme Court's repeated admonitions emphasizing the doctrine's 'modest scope.'" *Enrietto*, 49 V.I. at 319 (citations omitted). *See Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 276 (1988) ("If the order at issue fails to satisfy any one of these requirements, it is not appealable under the collateral-order [doctrine].") (citations omitted). Finally, "[i]f there is doubt whether an order is collateral, the matter should be resolved in favor of finding a non-appealable controversy." *In re PHM Credit Corp.*, 99 B.R. 762, 765 (E.D. Mich. 1989) (citations omitted).

¶31    Here, the Superior Court's Apellate Division dismissed Sergent's interlocutory appeal because it concluded that it lacked jurisdiction under Superior Court Rule 322(a).[9] Rule 322(a) states that the Appellate Division only has authority to hear appeals arising from final judgments of the Magistrate Division. Neither the Virgin Islands Code, the Superior Court rules, nor this Court's precedent provide the Superior Court with direct authority to entertain interlocutory appeals. Undeniably, the order that disqualified Milligan from representing Sergent and Garcia's estate was entered in the Magistrate Division before that court issued a final judgment on the underlying matter (Biamonte's contestation of Garcia's will). Thus, the order that Sergent appealed

---

[9] "Appealable Decisions. Final orders or judgments of the Magistrate Division resolving completely the merits of cases which came before them pursuant to their original jurisdiction, as provided by 4 V.I.C. § 123(a), are immediately appealable to judges of the Superior Court of the Virgin Islands, as well as any interlocutory orders appealable by law." V.I. SUPER. CT. R. 322(a).

to the Appellate Division was not final and the Appellate Division would have needed an exception like the collateral order doctrine to hear Sergent's appeal.

¶32    However, although Sergent only implicitly alleged the collateral order doctrine as a basis by which the Appellate Division could address her appeal, we nevertheless find her assertion persausive and will remand this matter to the Superior Court with instructions that are outlined in this opinion.

¶33    As stated above, a proponent must demonstrate three elements to prevail on a claim that an interlocutory ruling is reviewable via the collateral order doctrine. The elements are that the challenged ruling "(1) conclusively determined the disputed question; (2) resolved an important issue separate from the merits of the case; and (3) is effectively unreviewable on appeal from a final judgment." *In re Deepwater Horizon*, 793 F.3d 479, 484 (5th Cir. 2015). *See also Plaintiff A v. Schair*, 744 F.3d 1247, 1254 (11th Cir. 2014) ("The importance of the right asserted is 'a significant part of [the] collateral order doctrine. . . .' 'Examples of 'important issues' significant enough to justify immediate appellate jurisdiction under the [second prong of the] collateral order doctrine include denials of the defenses of absolute presidential immunity, qualified immunity, Eleventh Amendment immunity, and double jeopardy.'") (citations omitted); *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 107 (2009) (Bare unreviewability does not suffice; "the decisive consideration is whether delaying review until the entry of final judgment 'would imperil a substantial public interest' or 'some particular value of a high order.'"); *Id.* (noting that the unreviewability inquiry "simply cannot be answered without a judgment about the value of the interests that would be lost" without immediate appeal).

¶34    Here, the Magistrate Division's order disqualifying Milligan undeniably satisfies the first prong of the collateral order test because it conclusively determined whether Milligan could serve

as counsel for Sergent and Garcia's estate. *See Beach TV Cable Co., Inc. v. Comcast of Florida/Georgia, LLC*, 808 F.3d 1284, 1290 (11th Cir. 2015) ("[I]n *Firestone Tire & Rubber Co. v. Risjord*, 449 U.S. 368, 375–76 (1981), the Supreme Court held that an order denying an attorney disqualification motion satisfied the first [collateral order doctrine] requirement 'because the only issue is whether challenged counsel will be permitted to continue his representation.'") (citations omitted).

¶35    However, the issue of whether the Magistrate Division's order disqualifying Milligan satisfies the two remaining elements of the collateral order test is a more exacting question. Specifically, we believe that an internal appeal from the Magistrate Division is permitted. There is no statute which restricts judges of the Superior Court to only reviewing final judgments of the Magistrate Division; rather, it is only Superior Court Rule 322(a) which limits such appeals to "[f]inal orders or judgments of the Magistrate Division resolving completely the merits of cases which came before them pursuant to their original jurisdiction . . . as well as any interlocutory orders appealable by law." *See supra* note 9. Therefore, the final judgment rule, as it applies to internal appeals from the Magistrate Division pursuant to Superior Court Rule 322, constitutes a claims-processing rule, rather than a jurisdictional requirement.

¶36    Moreover, we conclude that the internal appeal in this case arises from an "interlocutory order[] appealable by law" within the meaning of Superior Court Rule 322(a). Nonetheless, we acknowledge that this Court held in *Enrietto* that title 4, section 32(a) of the Virgin Islands Code does not authorize an appeal from a disqualification order dismissing an attorney from the Superior Court to the Supreme Court. However, we do not believe that our interpretation of section 32(a)— a statute the Legislature modeled after a federal statute which governs an appeal from one court to another court—precludes us from reaching a different result with respect to an internal appeal from

a Superior Court magistrate judge to a Superior Court judge pursuant to a court rule enacted by this Court which was not modeled after any corresponding federal enactment.

¶37 Perhaps most significantly, unlike *Enrietto*, this case is not an ordinary civil case, but a probate matter in which different considerations of finality traditionally apply. A typical civil case involves an in personam action "where the party bringing the action seeks a personal judgment against the defendant, such as an award of monetary damages." *Bryan v. Fawkes*, 61 V.I. 416, 445 (V.I. 2014). "In contrast, an in rem action is one in which the judgment of the court determines the title to property and the rights of the parties, not merely as between themselves, but also as against all persons at any time dealing with them or with the property." *Id.* (quoting BLACK'S LAW DICTIONARY 864 (9th ed. 2009)).

¶38 Unlike the typical civil case, the objective of a court presiding over a probate proceeding is not to determine whether the plaintiff should receive a monetary judgment against the defendant – rather, it is to disburse the decedent's assets in the manner provided by law while minimizing waste. Not surprisingly, courts throughout the United States have experienced "difficulty of applying the final judgment rule . . . to probate proceedings" since "probate proceedings . . . often contain multiple intermediate orders that are final with regard to certain discrete issues." *In re Estate of Goza*, 2014 WL 7235166, at *4 (Tenn. Ct. App. Dec. 19, 2014) (unpublished). In fact, some states, such as Arkansas and Texas, have placed a judicial gloss on their final judgment statutes that permits many otherwise interlocutory probate orders to be appealable as if they were final judgments. *Id.* (collecting cases).

¶39 Significantly, there are several reasons for treating certain orders as final in the probate context even when equivalent orders entered in ordinary civil cases would not qualify as final orders. As the United States Supreme Court recognized in *Richardson-Merrell* and other cases,

piecemeal appeals in ordinary civil cases are highly disfavored because they delay rather than expedite litigation, thus resulting in greater expense to the parties and making inefficient use of judicial resources. But that is not the case with many probate proceedings – unlike most civil cases, piecemeal appeals are often favored in probate cases, in that such appeals "serve the salutary purpose of allowing many matters of importance to be resolved while the estate is open, and prevent[ ] one complex appeal from all matters that occurred [during] the administration of the estate." *In re Kraus*, 318 S.W.3d 274, 276 (Mo. Ct. App. 2010). This is because, unlike a typical civil case, "[a] probate proceeding consists of a continuing series of events, in which the probate court may make decisions at various points in the administration of the estate on which later decisions will be based," and thus "[t]he need to review controlling, intermediate decisions before an error can harm later phases of the proceeding has been held to justify modifying the 'one final judgment' rule." *Logan v. McDaniel*, 21 S.W.3d 683, 688 (Tex. App. 2000).

¶40 Obviously, we do not believe that any and every decision issued in conjunction with a probate case is subject to an immediate appeal under the collateral order doctrine. In fact, this Court held, in one of its earliest decisions, that it lacked jurisdiction to review an order that the appellant alleged illegally provided spousal support and rent-free possession of the marital home for a period purportedly greater than permitted by Virgin Islands law. *See Estate of George v. George*, 50 V.I. 268, 269 (V.I. 2008). However, as illustrated by the subsequent appeal after entry of final judgment, the remedy for an error such as this is simple – because the error only affects monetary distributions to a single individual, on remand the court could simply enter a new adjudication that reflects that the spouse received greater payments than she was entitled to, such as by reducing the spouse's share of the remaining assets or ordering the spouse to reimburse the estate for the excess payments. *See In re Estate of George*, 59 V.I. 913 (V.I. 2013).

¶41 An error, such as the one alleged in this case, however, is not so easily corrected. If the Superior Court erred in disqualifying Attorney Milligan as counsel, but the error cannot be corrected until after entry of a true final judgment—that is, after administration of Garcia's estate has been fully adjudicated—the remedy is not as simple as just directing one party to reimburse the estate or receive a smaller share of the distributed assets. To the extent Attorney Milligan's client is not satisfied with the result of the probate proceeding and succeeds in getting the September 23, 2021 disqualification order reversed, the likely outcome would be vacating all orders and other events that occurred after issuance of the September 23, 2021 order in which Attorney Milligan's client was affected – and because Attorney Milligan's client is the executrix of the estate, that would effectively impel re-litigating the entire proceeding. Such a result, while inefficient, may be accepted in an ordinary civil case involving only private parties seeking to vindicate private interests; however, given that the purpose of a probate proceeding is to distribute the assets in the decedent's estate, and the costs of administration are typically paid from that estate's assets, the effect of reopening the proceedings so that they may be re-litigated with counsel of the executrix's choice is to deplete the estate's assets, thus affecting the rights of individuals who may not even be a party to the probate proceeding, even though the attorney's potential testimony may impact the merits of the case.

¶42 Consequently, we conclude that the internal appeal in this case is authorized by Superior Court Rule 322(a). The Magistrate Division's disqualification order conclusively determined the disputed question, and that question relates to an important issue somewhat separate from the merits of the underlying probate proceeding. And while a disqualification order may not necessarily be effectively unreviewable on appeal from a final judgment in an ordinary civil case, in the context of a probate proceeding it is effectively unreviewable: while the decision may be

reviewable, it cannot be reviewed effectively, in that reversing the disqualification order after entry of a final judgment would result in waste and inefficiency that is contrary to the purpose of probate law.

¶43    Accordingly, in this case, rather than dismiss Sergent's appeal with prejudice for lack of jurisdiction, we conclude that the Superior Court should have recognized an exception to the final judgment rule existed which allowed it to hear the matter and decide the appeal on the merits. Undeniably, the Superior Court should not disregard any rule routinely, but, considering the importance of an individual's right to select his or her counsel, we hold the Appellate Division committed reversible error when it dismissed Sergent's appeal without recognizing that an exception to the final judgment rule existed. *See Lemberg Law, LLC v. eGeneration Marketing, Inc.*, No. 3:18-cv-570 (CSH), 2020 WL 2813177, at *18 (D. Conn. May 29, 2020) (unpublished) ("Because of the serious impact of attorney disqualification on the client's right to select counsel of his choice, 'a district court must balance a client's right freely to choose his counsel against 'the need to maintain the highest standards of the profession.' . . . In particular, '[r]ecognizing the serious impact of attorney disqualification on the client's right to select counsel of his choice, [the Second Circuit has] indicated that such relief should ordinarily be granted only when a violation … poses a significant risk of trial taint.'") *Tyco Healthcare Grp. LP v. Ethicon Endo-Surgery, Inc.*, No. 3:10CV60(JBA), 2011 WL 12910725, at *5 (D. Conn. Dec. 30, 2011) (quoting *Arista Records LLC v. Lime Group LLC*, 2011 WL 672254 (S.D.N.Y. Feb. 22, 2011)); *see also Glueck v. Jonathan Logan, Inc.*, 653 F.2d 746, 748 (2d Cir. 1981); *Monon Corp. v. Wabash Nat. Corp.*, 764 F.Supp. 1320, 1323 (N.D. Ind. 1991) ("'The results as well as the language in recent cases indicate that the Seventh Circuit considers the right of a party to select counsel of his choice to be a matter of significant importance, which will not be disturbed unless a specifically identifiable impropriety

has occurred.'"); *Gifford v. Target Corp.*, 723 F.Supp.2d 1110, 1117 (D. Minn. 2010) ("In determining whether to disqualify counsel, a court balances the interests and motivations of the attorneys, the clients, and the public."). Therefore, because the Appellate Division should have recognized that an exception to the final judgment rule existed which enabled it to address Sergent's appeal as well as recognize the importance of selecting one's counsel, we reverse the Appellate Division's dismissal with prejudice of Sergent's appeal.

## B. Evidentiary Hearing

¶44    On appeal, Sergent also argues that the Magistrate Division's order disqualifying Milligan was clearly erroneous. Sergent further asserts the Magistrate Division's rulings that stayed the Rule 7 evidentiary hearing were arbitrary and capricious. However, because we believe those questions are better addressed by either the Superior Court's Appellate Division or Magistrate Division on remand, we decline to address them and the nine supplemental issues delineated in Sergent's notice of appeal. *See Diaz*, 58 V.I. at 204 ("When reviewing decisions of the Appellate Division of the Superior Court, we typically consider the underlying rulings made by the magistrate only to the extent that they were adopted or affirmed by the Appellate Division of the Superior Court.) (citations omitted). However, because the Appellate Division and this Court apply the same clear error review to case facts and plenary review to legal issues, we, in the interests of judicial economy, will address the Magistrate Division's refusal to conduct an evidentiary hearing on Milligan's disqualification. ("However, when we apply the same standard as the Appellate Division, we may, in the interests of judicial economy, look past the Appellate Division's decision and directly review the magistrate's rulings.") *Id.* (citations omitted). Because we find the

Magistrate Division erred when it failed to hold an evidentiary hearing on Milligan's disqualification, we deem judicial economy is best served by reviewing that issue here.

¶45    In its September 23, 2021 order disqualifying Milligan without an evidentiary hearing, the Magistrate Division referenced this Court's pronouncements in *Sekou v. Moorhead*, 72 V.I. 1048 (V.I. 2020) and *In re Drue*, 57 V.I. 517 (V.I. 2012). J.A. Vol. II 112-13. Despite stating that the cases were distinguishable from the Sergent's case, the Magistrate Division apparently employed the People's rationale in *Drue* to support Milligan's disqualification. *Id*. In *Drue*, the People argued that the court may decide a disqualification motion without an evidentiary hearing because the court had a sufficient record before it. *Id*. Although we agree that some motions may appropriately be decided without an evidentiary hearing, we disagree that Milligan's disqualification motion is one of them.

¶46    Irrefutably, "court[s] have long recognized [a party's] right to retain counsel of his choice." *Wilson v. Mintzes*, 761 F.2d 275, 279 (6th Cir. 1985). *See Bottaro v. Hatton Associates*, 680 F.2d 895, 897 (2d Cir. 1982) ("[A]ll litigants [have] the right to select their own counsel."); *Shukh v. Seagate Tech.*, LLC, Civ. No. 10-404 (JRT/JJK), 2010 WL 5018189, at *6 (D. Minn. Dec. 2, 2010) (unpublished) ("Courts take into account . . . the 'important public right' of a party to select its own counsel.") (citations omitted). However, the right to select counsel is not without limits. Specifically, there is no constitutional right to counsel in a civil case. *Kee v. Felzien*, No. 17-cv-00264-MEH, 2017 WL 11506225, at *1 (D. Colo. Oct. 11, 2017) (slip copy). Additionally, when contemplating an attorney's disqualification and, by extension, a party's right to select its own counsel, courts balance a client's right to freely choose his counsel versus the need to maintain the highest standards of the profession. *Lemberg Law, LLC v. eGeneration Mktg., Inc.*, No. 3:18-cv-570 (CSH), 2020 WL 2813177, at *18 (D. Conn. May 29, 2020) (unpublished). Accordingly, an

attorney's disqualification is "only warranted in the rare circumstance where the attorney's conduct 'poses a significant risk of trial taint.'" *Id.* at *19 (citations omitted).

¶47    Here, Sergent volitionally selected Milligan to serve as her attorney, to draft Garcia's will, and to represent both Sergent and the estate in the probate of Garcia's will. Therefore, Milligan's representation of Sergent and the estate is crucially important to both parties. However, Biamonte's will contest and her assertion that Milligan possessed essential information pivotal to the matter which required him to testify at trial and to cease his duties as counsel for Sergent and the estate implicates Rule 211.3.7(a) of the Virgin Islands Rules of Professional Conduct. *See supra* note 6. Although we will not probe whether Milligan's disqualification is necessary to Biamonte's will contest and we recognize that the Superior Court will not need to conduct an evidentiary hearing to decide every motion,[10] we conclude that the right to select one's counsel is so unequivocally momentous that, barring exceptional circumstances, an evidentiary hearing on the issue of an attorney's disqualification should be held to properly appraise the arguments in favor of disqualification.[11] *See Maturi v. McLaughlin Corp.*, No. 01-318-M, 2001 WL 1669254, at *4 (D. N.H. Dec. 31, 2001) (unpublished) ("Because the competing interests affected by disqualification decisions are important ones . . . , an evidentiary hearing is necessary."); *Sekou*, 72 V.I. at 1055-56, ("Ordinarily, the Superior Court should hold an evidentiary hearing when considering whether an attorney should be disqualified as counsel.") (citations omitted).

---

[10] "[T]he right to an evidentiary hearing is not absolute and an evidentiary hearing is 'not necessary if the submissions before the court, including any reply or traverse by the petitioner, reveal no factual disputes that are material to disposition of the issues raised in the petition, and the court makes a written finding to that effect.'" *Cascen v. Gov't of the V.I.*, 74 V.I. 512, 517 (V.I. 2021) (citations omitted).

[11] "[The Virgin Islands Supreme] Court has already held that the Superior Court need not hold an evidentiary hearing—even if one would ordinarily be required—if the moving party 'fails to 'present[ ] a colorable factual basis to support [its] claim.'" *Sekou*, 72 V.I. at 1056.

¶48    To decide Milligan's disqualification pursuant to Rule 211.3.7 of the Virgin Islands Rules of Professional Conduct, the Magistrate Division merely reviewed Milligan's billing submissions and deduced that they indicated Milligan had personal information germane to the litigation. Shockingly, the Magistrate Division failed to question Milligan concerning the accuracy of the submissions, failed to ask Sergent about Garcia's awareness and understanding of the will Milligan prepared, and failed to interview the witnesses who allegedly signed the document at Garcia's behest and who saw Garcia volitionally sign the document. With such sparse information, we cannot conclude that the Magistrate had a sufficient record from which to properly address Milligan's disqualification. Accordingly, the Magistrate Division erred when it failed to conduct an evidentiary hearing on Milligan's disqualification. Therefore, we remand with instructions to the Superior Court to direct the Magistrate Division to conduct an evidentiary hearing to properly ascertain if Milligan should be disqualified from representing Appellant and the estate of Felipe Garcia.

## V.    CONCLUSION

¶49    For the reasons explicated above, we reverse the Appellate Division's dismissal with prejudice of Sergent's appeal and remand with instructions for the Superior Court to direct the Magistrate Division to conduct an evidentiary hearing on whether Milligan must be disqualified from his representation of Sergent and Garcia's estate.

**Dated this 11th day of March 2025**

BY THE COURT:

IVE ARLINGTON SWAN
Associate Justice

**ATTEST:**
**VERONICA J. HANDY, ESQ.**
**Clerk of the Court**

**By:**  /s/ Reisha Corneiro
     **Deputy Clerk II**

**Date:**  March 11, 2025